**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHIVA STEIN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EAGLE BANCORP, INC., SUSAN G. RIEL, RONALD D. PAUL, CHARLES D. LEVINGSTON, JAMES H. LANGMEAD, and LAURENCE E. BENSIGNOR,<br><br>Defendants. | Case No. 1:19-cv-06873-LGS |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED MOTION
FOR (I) PRELIMINARY APPROVAL OF CLASS ACTION SETTLEMENT;
(II) CERTIFICATION OF THE SETTLEMENT CLASS; AND
(III) APPROVAL OF NOTICE TO THE SETTLEMENT CLASS**

**TABLE OF CONTENTS**

I.      PRELIMINARY STATEMENT ..................................................................... 2

II.     NATURE OF THE ACTION .......................................................................... 2

III.    PROCEDURAL HISTORY............................................................................. 3

        A.      The Initial Complaint And Lead Plaintiff Appointment Process........................... 3

        B.      Lead Counsel's Investigation And Amended Complaint ...................................... 3

        C.      The Motion To Dismiss The Amended Complaint................................................. 4

        D.      Mediation Efforts And Settlement Negotiation ....................................................... 5

IV.     STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E) ..................... 6

A.      Preliminary Approval Should Be Granted, And Class Notice Given, If A Settlement Is "Fair, Reasonable, And Adequate" And The Court Will "Likely" Be Able To Grant Final Approval ....................................................................................... 6

V.      ARGUMENT................................................................................................... 7

A.      The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors Outlined By Rule 23(e)(2) And The Remaining *Grinnell* Factors........................................... 7

        1.      Plaintiffs And Lead Counsel Adequately Represented The Class.............. 7

        2.      The Settlement Is The Result Of Arm's Length Negotiations.................... 9

        3.      The Settlement Is An Excellent Result For The Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation ........ 9

                a.      Complexity, Expense and Duration of Litigation ......................... 10

                b.      Establishing Liability and Damages ............................................. 10

                c.      Risks of Maintaining Class Action Status ................................... 14

                d.      Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation......................................................... 14

        4.      Rule 23(e)(2)(C)(iii)-(iv) .......................................................................... 15

        5.      The Settlement Treats All Members Of The Class Equitably Relative To Each Other ................................................................................................ 17

6.      The Remaining *Grinnell* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval ............................................................................... 17

B.    Certification Of The Settlement Class Is Appropriate ...................................................... 19

1.      The Settlement Class Satisfies The Requirements Of Rule 23(a) ........................ 19

2.      The Settlement Class Satisfies The Requirements Of Rule 23(b)(3) ................... 21

3.      The Court Should Appoint Lead Counsel As Counsel For The Settlement Class ...................................................................................................................... 22

C.    The Court Should Approve The Proposed Form And Method of Notice To The Class .. 23

VI.    PROPOSED SCHEDULE OF SETTLEMENT EVENTS ............................................... 24

VII.   PROPOSED DEDUCTIONS FROM THE SETTLEMENT FUND ............................... 24

VIII.  CONCLUSION ............................................................................................................... 25

# TABLE OF AUTHORITIES

CASES

*Amchem Prod., Inc. v. Windsor*,
521 U.S. 591, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997) .................................................... 21, 22

*Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*,
133 S. Ct. 1184 (2013) ........................................................................................................ 20

*Anixter v. Home-Stake Prod. Co.*,
77 F.3d 1215 (10th Cir. 1996) ............................................................................................. 14

*Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*,
222 F.3d 52 (2d Cir. 2000) .................................................................................................... 7

*Beach v. JPMorgan Chase Bank, N.A.*,
2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) .......................................................................... 7

*Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed Care, L.L.C.*,
504 F.3d 229 (2d Cir. 2007) ................................................................................................. 19

*Chatelain v. Prudential-Bache Sec., Inc.*,
805 F. Supp. 209 (S.D.N.Y. 1992) ....................................................................................... 14

*Cheng Jiangchen v. Rentech, Inc.*,
2019 WL 5173771 (C.D. Cal. Oct. 10, 2019) ....................................................................... 20

*Christine Asia Co., Ltd. v. Yun Ma*,
2019 WL 5257534 (S.D.N.Y. Oct. 16, 2019) ....................................................................... 17

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ............................................................................................... 7, 9

*City of Providence v. Aeropostale, Inc.*,
2014 WL 1883494 (S.D.N.Y. May 9, 2014) ........................................................................ 23

*D'Amato v. Deutsche Bank*,
236 F.3d 78 (2d Cir. 2001) .................................................................................................... 9

*Fishoff v. Coty Inc.*,
2010 WL 305358 (S.D.N.Y. Jan. 25, 2010) ......................................................................... 11

*In re "Agent Orange" Prods. Liab. Litig.*,
597 F. Supp. 740 (E.D.N.Y. 1984) ....................................................................................... 14

*In re AOL Time Warner, Inc.*,
   2006 WL 903236 (S.D.N.Y. Apr. 6, 2006).......................................................................... 18, 21

*In re BankAtlantic Bancorp, Inc.*,
   2011 WL 1585605 (S.D. Fla. Apr. 25, 2011) ............................................................................ 13

*In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig.*,
   909 F. Supp. 2d 259 (S.D.N.Y. 2012)...................................................................................... 18

*In re China Med. Corp. Sec. Litig.*,
   2014 WL 12581781 (C.D. Cal. Jan. 7, 2014) ............................................................................ 9

*In re Citigroup, Inc. Sec. Litig.*,
   965 F. Supp. 2d 369 (S.D.N.Y. 2013)...................................................................................... 17

*In re EVCI Career Colls.*,
   2007 WL 2230177 (S.D.N.Y. July 27, 2007) ............................................................................ 8

*In re Facebook, Inc. IPO Sec. and Deriv. Litig.*,
   2015 WL 6971424 (S.D.N.Y. Nov. 9, 2015)............................................................................ 13

*In re GSE Bonds Antitrust Litig.*,
   414 F. Supp. 3d 686 (S.D.N.Y. 2019)............................................................................ 9, 10, 14

*In re IMAX Sec. Litig.*,
   283 F.R.D. 178 (S.D.N.Y. 2012) ............................................................................................. 18

*In re Keurig Green Mountain Single-Serve Coffee Anti. Litig.*,
   2020 WL 7389330 (S.D.N.Y. Dec. 16, 2020) ......................................................................... 23

*In re Marsh ERISA Litig.*,
   265 F.R.D. 128 (S.D.N.Y. 2010) ............................................................................................. 17

*In re Metlife Demutualization Litig.*,
   689 F. Supp. 2d 297 (E.D.N.Y. 2010) ..................................................................................... 18

*In re MF Glob. Holdings Ltd. Inv. Litig.*,
   310 F.R.D. 230 (S.D.N.Y. 2015) ....................................................................................... 19, 22

*In re NASDAQ Mkt.-Makers Antitrust Litig.*,
   187 F.R.D. 465 (S.D.N.Y. 1998) ............................................................................................... 8

*In re Omnicom Grp., Inc. Sec. Litig.*,
   597 F.3d 501 (2d Cir. 2010)..................................................................................................... 12

*In re Patriot Nat'l, Inc. Sec. Litig.*,
   828 Fed.Appx. 760 (2d Cir. Oct. 2, 2020) ...................................................................... 7, 8, 20

*In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*,
   330 F.R.D. 11 (E.D.N.Y. 2019) ....................................................................................... 6

*In re Pfizer Inc. Sec. Litig.*,
   282 F.R.D. 38 (S.D.N.Y. 2012) ...................................................................................... 19

*In re Sadia, S.A. Sec. Litig.*,
   269 F.R.D. 298 (S.D.N.Y. 2010) .................................................................................... 19

*In re Twinlab Corp. Sec. Litig.*,
   187 F. Supp. 2d 80 (E.D.N.Y. 2002) .............................................................................. 20

*In re Vivendi Universal, S.A. Sec. Litig.*,
   242 F.R.D. 76 (S.D.N.Y. 2007) ................................................................................ 21, 22

*In re Warner Chilcott Ltd. Sec. Litig.*,
   2008 WL 5110904 (S.D.N.Y. Nov. 20, 2008)................................................................. 23

*Kalnit v. Eichler*,
   99 F. Supp. 2d 327 (S.D.N.Y. 2000).............................................................................. 11

*Maley v. Del Global Tech. Corp.*,
   186 F. Supp. 2d 358 (S.D.N.Y. 2002)............................................................................. 16

*Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*,
   575 U.S. 175 (2015)..................................................................................................... 11

*Phillips Petroleum Co. v. Shutts*,
   472 U.S. 797 (1985)..................................................................................................... 22

*Roach v. T.L. Cannon Corp.*,
   778 F.3d 401 (2d Cir. 2015)........................................................................................... 21

*Robbins v. Koger Props., Inc.*,
   116 F.3d 1441 (11th Cir. 1997) ..................................................................................... 13

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
   396 F.3d 96 (2d Cir. 2005)........................................................................................... 8, 9

*Wilson v. LSB Indus., Inc.*,
   2018 WL 3913115 (S.D.N.Y. Aug. 13, 2018)............................................................. 20, 22

RULES

FED. R. CIV. P. 23 ................................................................................................................ *passim*

Lead Plaintiff Danilee Cassinelli, as Trustee of the Danilee Cassinelli Trust DTD 7-23-93 ("Lead Plaintiff") and additional named plaintiff Norfolk County Retirement System ("Norfolk," and together with Lead Plaintiff, "Plaintiffs"), on behalf of themselves and all others similarly situated, respectfully submit this memorandum in support of their unopposed motion seeking: (i) preliminary approval of the proposed Settlement set forth in the Stipulation and Agreement of Settlement dated June 28, 2021 (the "Stipulation");[1] (ii) certification of the proposed Settlement Class;[2] (iii) approval of the form and manner of giving notice of the proposed Settlement to Settlement Class Members; and (iv) the scheduling of a hearing date ("Final Approval Hearing" or "Settlement Hearing") at which the Court will consider (a) final approval of the proposed Settlement and entry of the proposed Final Judgment Approving Class Action Settlement, (b) the Plan of Allocation of settlement proceeds, and (c) Lead Counsel's application for an award of attorneys' fees and Litigation Expenses.

---

[1] Unless otherwise defined, all capitalized terms herein have the same meanings as set forth in the Stipulation, which is attached as Exhibit 1 to the Declaration of Leanne H. Solish in Support of Plaintiffs' Unopposed Motion for Preliminary Approval of Class Action Settlement ("Solish Decl."), filed concurrently herewith.

[2] The "Settlement Class" means all persons and entities who or which purchased or otherwise acquired Eagle Bancorp, Inc. ("Eagle" or the "Company") common stock and/or Eagle call options, and/or wrote Eagle put options, between March 2, 2015 and July 17, 2019, inclusive (the "Settlement Class Period"). Excluded from the Settlement Class are: (1) persons who suffered no compensable losses; and (2) (a) Defendants; (b) the legal representatives, heirs, successors, assigns, and members of the Immediate Families of the Individual Defendants; (c) the parents, subsidiaries, assigns, successors, predecessors, and affiliates of Eagle; (d) any persons who served as officers and/or directors of Eagle during the Settlement Class Period; (e) any entity in which any of the foregoing (a) – (d) excluded persons have or had a majority ownership interest during the Settlement Class Period; (f) any trust of which any Individual Defendants is the grantor or settlor or which is for the benefit of any Individual Defendant and/or member(s) of his or her Immediate Family; and (g) Defendants' liability insurance carriers. Also excluded from the Settlement Class are any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.

1

## I.    PRELIMINARY STATEMENT

The proposed Settlement will resolve all claims against Defendants[3] in exchange for a sizable cash payment of $7,500,000 (the "Settlement Amount") for the benefit of the Settlement Class.  This is an excellent result and represents a recovery in the range of approximately 2.5% to 28.8% of the *maximum* recoverable damages related to the pending claims.

By the time the Settlement was reached, Plaintiffs and their counsel were well informed about the strengths and weaknesses of their claims and Defendants' defenses.  Prior to reaching the Settlement, Lead Counsel: conducted an extensive investigation into Eagle's allegedly wrongful acts, which included consultation with experts in the fields of loss causation, damages, banking and accounting; drafted a comprehensive amended complaint based on this investigation; engaged in substantial briefing opposing Defendants' motion to dismiss; and engaged in extensive mediation efforts with a well-respected mediator of complex cases—Jed Melnick, Esq. of JAMS.

The Settlement is, therefore, the result of arms-length negotiations, conducted by informed and experienced counsel, in conjunction with an experienced neutral.  As discussed in greater detail below, Plaintiffs and Lead Counsel believe the proposed Settlement meets the standards for preliminary approval and is in the best interests of the putative Settlement Class.  Accordingly, Plaintiffs respectfully request that the Court grant the Settlement preliminary approval.

## II.    NATURE OF THE ACTION

This is a securities class action brought by investors alleging that Defendants made materially false and misleading statements and/or omissions about: (1) Eagle's related-party loan figures for fiscal years 2014 through 2017; (2) the terms of Eagle's related-party loans and their approval

---

[3] Defendants are: Eagle, and defendants Ronald D. Paul ("Paul"), Susan G. Riel ("Riel"), Charles D. Levingston ("Levingston"), James H. Langmead ("Langmead"), and Laurence E. Bensignor ("Bensignor") (collectively, the "Individual Defendants," and, together with Eagle, the "Defendants").

process; (3) Defendants' attestations as to the effectiveness of Eagle's internal controls and certifications in accordance with Sarbanes-Oxley ("SOX") Act of 2002 ("SOX Certifications"); and (4) Defendants' denials of a report issued by Marcus Aurelius Value (the "Aurelius Report") that was critical of Eagle and questioned the Company's material underreporting of its related-party loan figures. Plaintiffs further alleged that the prices of Eagle publicly-traded securities were artificially inflated as a result of Defendants' allegedly false and misleading statements and/or omissions, and declined when the truth was revealed.

## III.   PROCEDURAL HISTORY

### A.   The Initial Complaint And Lead Plaintiff Appointment Process

On July 24, 2019, the instant action entitled, *Stein v. Eagle Bancorp, Inc., et al.*, Case No. 1:19-cv-06873-LGS, was filed by Shiva Stein in the United States District Court for Southern District of New York (the "Court"). ECF No. 1. The case was assigned to United States District Court Judge Lorna G. Schofield and Magistrate Judge Katharine H. Parker. By Order dated November 7, 2019, the Court appointed Anthony Cassinelli, as Trustee of the Danilee Cassinelli Trust DTD 7-23-93 as Lead Plaintiff and approved Lead Plaintiff's selection of Glancy Prongay & Murray LLP ("GPM") as Lead Counsel for the proposed class. ECF No. 33.[4]

### B.   Lead Counsel's Investigation And Amended Complaint

Following Lead Counsel's appointment, counsel conducted a comprehensive investigation into Eagle's allegedly wrongful acts, which included, among other things: (1) reviewing and analyzing (a) Eagle's filings with the U.S. Securities and Exchange Commission ("SEC"), (b) public reports, blog posts, research reports prepared by securities and financial analysts, and news articles concerning Eagle, (c) Eagle's investor call transcripts, and (d) court filings, deed records, UCC

---

[4] In November 2020, following the death of Anthony Cassinelli, Danilee Cassinelli, as Trustee of the Danilee Cassinelli Trust DTD 7-23-93, was substituted as the Lead Plaintiff. *See* ECF Nos. 55, 57.

filings, and other publicly available material related to Eagle; and (2) retaining and working with a private investigator who conducted an investigation that involved, *inter alia*, numerous interviews of former Company employees and other sources of relevant information. Lead Counsel also consulted with damages and loss causation, accounting, and banking experts.

On January 21, 2020, Plaintiffs filed and served their Amended Class Action Complaint for Violations of the Federal Securities Laws (the "Complaint," ECF No. 37) asserting claims against all Defendants under Section 10(b) of the Securities Exchange Act of 1934 ("Exchange Act") and Rule 10b-5 promulgated thereunder, against the Individual Defendants under Section 20(a) of the Exchange Act, and additional scheme liability claims under Rule 10b-5(a) and (c) against Defendants Paul and Bensignor. Among other things, the Complaint alleged that Defendants made materially false and misleading statements and/or omissions with respect to: (1) Eagle's related-party loan figures for fiscal years 2014 through 2017; (2) the terms of Eagle's related-party loans and their approval process; (3) Defendants' attestations as to the effectiveness of Eagle's internal controls and SOX Certifications; and (4) Defendants' denials of the Aurelius Report that was critical of Eagle and questioned the Company's material underreporting of its related-party loan figures. The Complaint further alleged that the prices of Eagle publicly-traded securities were artificially inflated as a result of Defendants' allegedly false and misleading statements and/or omissions, and declined when the truth was revealed.

C.    **The Motion To Dismiss The Amended Complaint**

On April 2, 2020, Defendants filed and served a motion to dismiss the Complaint and a request for judicial notice of seven exhibits. ECF Nos. 45-47. On May 15, 2020, Plaintiffs filed and served their papers in opposition to Defendants' motion to dismiss and a request for judicial notice of two exhibits. ECF Nos. 50-51. On June 15, 2020, Defendants filed and served their reply papers. ECF No. 52.

4

### D.    Mediation Efforts And Settlement Negotiation

On December 23, 2020, the Parties requested the Court to stay all proceedings pending the Parties' participation in a mediation session overseen by Mr. Melnick.  ECF No. 58.  On December 27, 2020, the Court granted the Parties' stipulation staying all proceedings.  ECF No. 59.  On April 13, 2021, Lead Counsel and Defendants' Counsel participated in a full-day virtual mediation session before Mr. Melnick.  In advance of that session, the Parties exchanged, and provided to Mr. Melnick, detailed mediation statements and exhibits, which addressed the issues of both liability and damages.  The session ended without any agreement being reached.

On April 15, 2021, counsel for Plaintiffs, with Defendants' Counsel's consent, jointly updated the Court on the results of mediation.  Lead Counsel informed the Court that although the Parties did not reach an agreement to settle during the mediation session, discussions were productive and the Parties agreed to continue their discussions with the assistance of Mr. Melnick.  In light of the Parties' progress, Lead Counsel requested that the proceedings in the Action continue to be stayed for an additional three weeks.  ECF No. 64.  On April 16, 2021, the Court granted the Parties' application and continued the stay of proceedings in this Action and requested an update on the mediation discussions by May 6, 2021.  ECF No. 65.

Following the mediation session, the Parties continued their discussions with Mr. Melnick, which culminated in Mr. Melnick making a settlement proposal for the Parties' consideration, which both sides accepted.  The Parties thereafter memorialized the settlement in a confidential Memorandum of Understanding (the "MOU") executed on April 21, 2021.  The MOU sets forth, among other things, the Parties' agreement to settle and release all claims asserted against Defendants in the Action in return for a cash payment by or on behalf of Defendants of $7,500,000 for the benefit of the Settlement Class, subject to certain terms and conditions and the execution of a customary "long form" stipulation and agreement of settlement and related papers.

## IV.     STANDARDS FOR PRELIMINARY APPROVAL UNDER RULE 23(E)

### A.     Preliminary Approval Should Be Granted, And Class Notice Given, If A Settlement Is "Fair, Reasonable, And Adequate" And The Court Will "Likely" Be Able To Grant Final Approval

Rule 23(e) of the Federal Rules of Civil Procedure provides that a class action settlement must be presented to the Court for approval, and should be approved if the Court finds it "fair, reasonable, and adequate." FED. R. CIV. P. 23(e)(2).[5] Rule 23(e)(1) provides that preliminary approval should be granted where "the parties show[] that the Court will likely be able to: (i) approve the proposal under Rule 23(e)(2); and (ii) certify the class for purposes of judgment on the proposal." *Id.* Rule 23(e)(2)—which governs final approval—requires courts to consider the following questions in determining whether a proposed settlement is fair, reasonable, and adequate:

(A)     have the class representatives and class counsel adequately represented the class;
(B)     was the proposal negotiated at arm's length;
(C)     is the relief provided for the class adequate, taking into account:
  (i)     the costs, risks, and delay of trial and appeal;
  (ii)    the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;
  (iii)   the terms of any proposed award of attorneys' fees, including timing of payment; and
  (iv)    any agreement required to be identified under Rule 23(e)(3); and
(D)     does the proposal treat class members equitably relative to each other.

These Rule 23(e)(2) factors "add to, rather than displace, the *Grinnell* factors" traditionally considered by courts within the Second Circuit. *In re Payment Card Interchange Fee and Merchant Discount Antitrust Litig.*, 330 F.R.D. 11, 29 (E.D.N.Y. 2019). The Second Circuit's traditional factors utilized to evaluate the propriety of a class action settlement (certain of which overlap with Rule 23(e)(2)) are still relevant:

(1) the complexity, expense and likely duration of the litigation; (2) the reaction

---

[5] Unless otherwise indicated, all emphasis is added and citations and quotations omitted.

of the class to the settlement;[6] (3) the stage of the proceedings and the amount of discovery completed; (4) the risks of establishing liability; (5) the risks of establishing damages; (6) the risks of maintaining the class action through the trial; (7) the ability of the defendants to withstand a greater judgment; (8) the range of reasonableness of the settlement fund in light of the best possible recovery; [and] (9) the range of reasonableness of the settlement fund to a possible recovery in light of all the attendant risks of litigation.

*City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 463 (2d Cir. 1974); *see also Beach v. JPMorgan Chase Bank, N.A.*, 2020 WL 6114545 (S.D.N.Y. Oct. 7, 2020) (evaluating settlement based on factors set forth in FED. R. CIV. P. 23(e)(2) and *Grinnell*).  As set forth below, the proposed Settlement satisfies the criteria for preliminary approval under the Rule 23(e)(2) factors, as well as the relevant, non-duplicative *Grinnell* factors.

## V.   ARGUMENT

### A.   The Settlement Is Fair, Reasonable, And Adequate In Light Of The Factors Outlined By Rule 23(e)(2) And The Remaining *Grinnell* Factors

#### 1.   Plaintiffs And Lead Counsel Adequately Represented The Class

FED. R. CIV. P. 23(e)(2)(A) requires the Court to consider whether the "class representatives and class counsel have adequately represented the class."  In assessing adequacy, "the primary factors are whether the class representatives have any 'interests antagonistic to the interests of other class members' and whether the representatives 'have an interest in vigorously pursuing the claims of the class.'"  *In re Patriot Nat'l, Inc. Sec. Litig.*, 828 Fed.Appx. 760, 764 (2d Cir. Oct. 2, 2020) (citing cases); *see also Baffa v. Donaldson, Lufkin & Jenrette Sec. Corp.*, 222 F.3d 52, 60 (2d Cir. 2000) ("Generally, adequacy of representation entails inquiry as to whether: 1) plaintiff's interests are antagonistic to the interest of other members of the class and; 2) plaintiff's attorneys are

---

[6] The Court does not yet have the benefit of the Settlement Class's reaction because notice of the proposed Settlement has not yet been provided to the Settlement Class.

qualified, experienced and able to conduct the litigation.").[7]

First, Plaintiffs' claims are typical of and coextensive with the claims of the Settlement Class, and they have no antagonistic interests. Plaintiffs suffered substantial losses as a result of Defendants' allegedly wrongful conduct, and their interest in obtaining the largest possible recovery is, therefore, aligned with the other Settlement Class Members. *See Patriot*, 828 Fed.Appx. at 764 (finding adequacy where "lead plaintiffs were sufficiently motivated to recover as much as possible for each class member."). In addition, Plaintiffs diligently oversaw the litigation and communicated with Plaintiffs' Counsel on a regular basis to discuss case developments, including settlement. *See In re EVCI Career Colls.*, 2007 WL 2230177, at *4 (S.D.N.Y. July 27, 2007) ("[U]nder the PSLRA, a settlement reached under the supervision of appropriately selected Lead Plaintiffs is entitled to an even greater presumption of reasonableness.").

Second, Plaintiffs retained counsel that are highly experienced in securities litigation, and who have a long and successful track record of representing investors in such cases. *See* ECF Nos. 9-4 (GPM firm resume), 13-4 (Labaton Sucharow firm resume). As noted above, Lead Counsel vigorously prosecuted the Settlement Class's claims, and the Parties were acutely aware of the strengths and weaknesses of the case prior to settling the Action (*see* Sec. III., *supra*) (detailing Lead Counsel's extensive investigation into the Company, briefing on the motion to dismiss, and hard-fought mediation efforts). *See In re NASDAQ Mkt.-Makers Antitrust Litig.*, 187 F.R.D. 465, 474 (S.D.N.Y. 1998) (courts have consistently given "'great weight' . . . to the recommendations of counsel, who are most closely acquainted with the facts of the underlying litigation.").

---

[7] *Accord Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.,* 396 F.3d 96, 106-07 (2d Cir. 2005) ("Adequate representation of a particular claim is established mainly by showing an alignment of interests between class members, not by proving vigorous pursuit of that claim.")

### 2.    The Settlement Is The Result Of Arm's Length Negotiations

Rule 23(e)(2)(B) requires procedural fairness: that "the proposal was negotiated at arm's length." FED. R. CIV. P. 23(e)(2)(B).  A presumption of fairness, adequacy, and reasonableness may attach to a class settlement reached in arm's-length negotiations between experienced, capable counsel.  *Wal-Mart*, 396 F.3d at 116.  Here, as set forth in detail above (Sec. III.D., *supra*), the Parties arranged the mediation with Jed Melnick, Esq.  The arm's-length nature of the settlement negotiations, and the involvement of a mediator with substantial experience mediating complex securities class actions, supports the conclusion that the Settlement is fair and was achieved free of collusion.  *See D'Amato v. Deutsche Bank*, 236 F.3d 78, 85 (2d Cir. 2001) (a "mediator's involvement in . . . settlement negotiations helps to ensure that the proceedings were free of collusion and undue pressure"); *In re China Med. Corp. Sec. Litig.*, 2014 WL 12581781, at *4 (C.D. Cal. Jan. 7, 2014) (finding settlement reached as a result of mediation before Mr. Melnick weighs in favor of approval).

### 3.    The Settlement Is An Excellent Result For The Class In Light Of The Benefits Of The Settlement And The Risks Of Continued Litigation

Under Rule 23(e)(2)(C), the Court must also consider whether "the relief provided for the class is adequate, taking into account . . . the costs, risks, and delay of trial and appeal" along with other relevant factors.  FED. R. CIV. P. 23(e)(2)(C).[8]  As discussed below, each of these factors supports preliminary approval.

---

[8] Rule 23(e)(2)(C)(i) essentially incorporates six of the traditional *Grinnell* factors: the complexity, expense, and likely duration of the litigation (first factor); the risks of establishing liability and damages (fourth and fifth factors); the risks of maintaining class action status through the trial (sixth factor); and the range of reasonableness of the settlement fund in light of the best possible recovery and the attendant risks of litigation (eighth and ninth factors).  *See Grinnell*, 495 F.2d at 463; *see also In re GSE Bonds Antitrust Litig.*, 414 F. Supp. 3d 686, 693 (S.D.N.Y. 2019) ("This inquiry overlaps significantly with a number of *Grinnell* factors, which help guide the Court's application of Rule 23(e)(2)(C)(i).").

### a.    Complexity, Expense and Duration of Litigation

This Action involved alleged violations of the Federal Securities Laws, and Plaintiffs and Lead Counsel believe that the claims asserted against Defendants have merit.  They acknowledge, however, the expense and length of continued proceedings necessary to pursue their claims against Defendants through trial and appeals, as well as the very substantial risks they would face in establishing liability, loss causation, and damages (as discussed below).  Assuming Plaintiffs' claims were certified under Rule 23 (and not successfully reversed on a Rule 23(f) interlocutory appeal), and survived summary judgment, litigating the Action through (a potentially COVID-restricted) trial and post-trial appeals would have undoubtedly been a long and expensive endeavor.  Were the litigation to continue, a potential recovery—if any—would occur years from now, substantially delaying payment to the Settlement Class.  *GSE*, 414 F. Supp. 3d at 693 ("even if plaintiffs 'were to prevail at trial, post-trial motions and the potential for appeal could prevent the class members from obtaining any recovery for several years, if at all.'").  By contrast, the Settlement provides an immediate and substantial recovery for the Settlement Class, without exposing the Settlement Class to the risk, expense, and delay of continued litigation.

### b.    Establishing Liability and Damages

In considering these factors, "a court 'should balance the benefits afforded the Class, including immediacy and certainty of recovery, against the continuing risks of litigation.'"  *Id.* at 694.  While Lead Counsel believes Plaintiffs' claims have merit, they also recognize that they faced substantial obstacles to proving liability, loss causation, and damages.  When compared to the certainty of the significant benefit conferred by the Settlement, these risks militate against further litigation and support a determination that the Settlement is fair, reasonable and adequate.

**Establishing Liability:**  At the time the Settlement was reached, the Court had not ruled on the Defendants' motion to dismiss.  While Plaintiffs believe they effectively demonstrated that Eagle

10

made materially false and misleading statements in violation of the Federal Securities Laws, Defendants argue that their statements were not materially false and misleading, but rather were true statements of opinion and therefore subject to the heightened pleading standards of *Omnicare, Inc. v. Laborers Dist. Council Constr. Indus. Pension Fund*, 575 U.S. 175 (2015). Additionally, Defendants contend that the alleged false and misleading statements were not made with the requisite state of mind (*i.e.*, scienter) to support the securities fraud claims alleged.

Defendants also maintained that they acted in good faith in reporting the amounts, terms and approval process of Eagle's related-party loans, explaining that, *inter alia*: (i) the related-party loan review and approval process was subject to review by outside advisors and examined annually by regulators to ensure Regulation O compliance and that this extensive outside scrutiny gave Defendants reason to believe Eagle was accurately identifying and disclosing its related party loans; and (ii) the related party loans were performing well, providing Defendants comfort that the loans were properly vetted and made on arm's-length terms and involved no more risk than a third-party loan. While Plaintiffs and Lead Counsel strongly disagreed with this assertion, it was not meritless, and had the litigation continued there is simply no guarantee that the trier of fact would have adopted Plaintiffs' view of the case. Indeed, the scienter requirement is commonly regarded to be the most difficult element to prove in a securities fraud claim. *See, e.g.*, *Fishoff v. Coty Inc.*, 2010 WL 305358, at *2 (S.D.N.Y. Jan. 25, 2010) ("[T]he element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 634 F.3d 647 (2d Cir. 2011); *Kalnit v. Eichler*, 99 F. Supp. 2d 327, 345 (S.D.N.Y. 2000) ("The element of scienter is often the most difficult and controversial aspect of a securities fraud claim"), *aff'd*, 264 F.3d 131 (2d Cir. 2001).

**Loss Causation and Damages:** Plaintiffs would have also faced the significant risk that Defendants could prevail on their argument that Plaintiffs' losses were not causally connected to the

11

alleged false and misleading statements.  Plaintiffs allege that the disclosures on December 1, 2017 and July 17, 2019 constituted partial corrective disclosures *and/or* partial materializations of concealed risks.  Specifically, Plaintiffs allege that on December 1, 2017, the Aurelius Report revealed, among other things, that Eagle failed to disclose roughly $185 million of insider loans used to finance various RDP ventures.  Following the release of the Aurelius Report, Eagle's stock price declined $16.20 per share, roughly 24.5%, to close at $49.95 on December 1, 2017.  Relying on the Second Circuit's decision in *Omnicom*,[9] Defendants argued that the Aurelius Report cannot constitute a corrective disclosure because it was merely a "[n]egative characterization of already public information."  ECF No. 46 at 13.[10]

The second alleged corrective disclosure in this case is Eagle's July 17, 2019, announcement that it had been paying elevated legal and accounting fees and related expenses in responding to various government investigations concerning the Company's related party transactions.  Defendants argued that this disclosure did not constitute a corrective disclosure, because all of the information concerning the classification of the previously undisclosed related party loans had already been revealed to the market by, *at the very latest, March 1, 2019*, when Eagle issued its 2018 10-K.[11] ECF No. 46 at 11-13; ECF No. 52 at 3-4.  Defendants also argued that the July 2019 disclosure

---

[9] *In re Omnicom Grp., Inc. Sec. Litig.*, 597 F.3d 501 (2d Cir. 2010).

[10] Defendants also argued that the Aurelius Report made a variety of different allegations, including both the existence of undisclosed related party loans and "sweetheart" terms for those loans.  *Id.* at 12-13.  Depending on which allegations Plaintiffs were ultimately able to prove, Plaintiffs might have been required to disaggregate which portion of the December 1, 2017 drop was attributable to which set of allegations in the Aurelius Report.

[11] It was on this date that Eagle disclosed its "modified" related party loan totals, effectively validating the Aurelius Report allegations.  *See* ECF No. 50 at 6, 28-29.  Defendants argued that the absence of a price reaction on this date demonstrates the absence of loss causation.  ECF No. 46 at 11-12.  While Plaintiffs vigorously disagree with Defendants' contentions (ECF No. 50 at 26-30), Plaintiffs acknowledge that the loss causation issues in this case are complex and could have been resolved in a number of different ways by the Court or a jury if the case were to proceed without settlement approval.

could not predicate loss causation because Eagle's announcement referred to multiple government investigations concerning several different matters. If Defendants' arguments were accepted by the Court, Plaintiffs would be required to disaggregate the market's reaction to the revelation of fraud from non-fraud related information—an inherently risky process that would involve a so-called "battle of the experts." Plaintiffs could not be certain whether a jury would accept the view of its experts or of the well-qualified experts that Eagle would no doubt be able to present at trial. *See In re Facebook, Inc. IPO Sec. and Deriv. Litig.*, 2015 WL 6971424, at *5 (S.D.N.Y. Nov. 9, 2015) ("[D]amages would be subject to a battle of the experts, with the possibility that a jury could be swayed by experts for Defendants, who could minimize or eliminate the amount Plaintiffs' losses. Under such circumstances, a settlement is generally favored over continued litigation.").

If Defendants were to prevail on their loss causation arguments, the amount of potentially recoverable damages could be severely reduced, if not eliminated. For example, Defendants estimate that if the class period were to end after the issuance of the Aurelius Report, maximum theoretical damages would be approximately $26 million, and if the class period were to end after the issuance of the 2018 10-K, maximum theoretical damages would be approximately $75 million. These estimates do not include any reductions for disaggregation, and Defendants maintain that actual damages in this case are zero, because Defendants believe both that there is no liability (on falsity and scienter grounds) and that there is no loss causation in connection with any of the alleged corrective disclosures. Even if Plaintiffs were to overcome all of Defendants' arguments and prevail at trial, such a victory would not have guaranteed the Settlement Class an ultimate recovery larger than the $7,500,000 Settlement.[12]

---

[12] *See, e.g.*, *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (jury verdict of $81 million for plaintiffs against an accounting firm reversed on appeal and judgment entered for defendant); *In re BankAtlantic Bancorp, Inc.*, 2011 WL 1585605, at *20-*22 (S.D. Fla. Apr. 25,
*(Cont'd)*

13

### c.    Risks of Maintaining Class Action Status

While Plaintiffs and Lead Counsel are confident that the Settlement Class meets the requirements for certification, *see* Sec. V.B., *infra*, the class has not yet been certified, and Plaintiffs are aware there is a risk the Court could disagree, or that the class period could be shortened based on decisions related to loss causation.  Even if the Court were to certify the class, there is always a risk that the certified class could be decertified at a later stage in the proceedings.  *See Chatelain v. Prudential-Bache Sec., Inc.*, 805 F. Supp. 209, 214 (S.D.N.Y. 1992) ("Even if certified, the class would face the risk of decertification.").  Thus, the risks and uncertainty surrounding class certification also support approval of the Settlement, as Defendants undoubtedly would have challenged class certification.  *See GSE*, 414 F. Supp. 3d at 694 ("Although the risk of maintaining a class through trial is present in [every] class action . . . this factor [nevertheless] weighs in favor of settlement where it is likely that defendants would oppose class certification if the case were to be litigated.").

### d.    Range of Reasonableness in Light of the Best Possible Recovery and Attendant Risks of Litigation

The adequacy of the amount offered in settlement must be judged "not in comparison with the possible recovery in the best of all possible worlds, but rather in light of the strengths and weaknesses of plaintiffs' case."  *In re "Agent Orange" Prods. Liab. Litig.*, 597 F. Supp. 740, 762 (E.D.N.Y. 1984), *aff'd*, 818 F.2d 145 (2d Cir. 1987).  Here, the proposed Settlement provides a cash payment of $7,500,000 for the benefit of the Settlement Class.  This is an excellent result in light of the significant risks of continued litigation.  Plaintiffs' damages expert estimates that if Plaintiffs had

---

2011) (following a jury verdict in plaintiffs' favor on liability, the district court granted defendants' motion for judgment as a matter of law), *aff'd*, *Hubbard v. BankAtlantic Bancorp, Inc.*, 688 F.3d 713 (11th Cir. 2012); *Anixter v. Home-Stake Prod. Co.*, 77 F.3d 1215 (10th Cir. 1996) (Tenth Circuit overturned securities fraud class action jury verdict for plaintiffs in case filed in 1973 and tried in 1988 on the basis of 1994 Supreme Court opinion).

fully prevailed on all their claims at summary judgment and after a jury trial, if the Court certified the same class period as the Settlement Class Period, and if the Court and jury accepted Plaintiffs' damages theory—*i.e.*, Plaintiffs' best case scenario—the total **maximum** damages potentially available in this Action would be approximately $304 million.  However, Defendants already raised significant arguments concerning Plaintiffs' alleged partial corrective disclosures on December 1, 2017 and July 17, 2019 and would likely have raised additional significant arguments concerning the length of the class period if Plaintiffs prevailed on the motion to dismiss.  If any of Defendants' arguments were accepted by the Court or a jury, the Settlement Class's potential maximum damages could have been reduced to anywhere from $26 million to $75 million (and even further if disaggregation principles were applied).  Thus, the $7.5 million Settlement represents a recovery of 2.5% to 28.8% (assuming $26 million in damages), a range that falls well above the median recovery of 1.7% of estimated damages in securities class actions in 2020.  *See* Solish Decl., Ex. 2 (Janeen McIntosh and Svetlana Starykh, *Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review* (NERA Jan. 25, 2021 at p. 20 (Fig. 16)).

### 4.    Rule 23(e)(2)(C)(iii)-(iv)

Under Rule 23(e)(2)(C), courts also must consider whether the relief provided for the class is adequate in light of "the effectiveness of any proposed method of distributing relief to the class, including the method of processing class-member claims;" "the terms of any proposed award of attorney's fees, including timing of payment;" and "any agreement required to be identified under Rule 23(e)(3)." FED. R. CIV. P. 23(e)(2)(C)(ii)-(iv).  Each of these factors either supports approval of the Settlement or is neutral and does not suggest any basis for inadequacy of the Settlement.

**Rule 23 (e)(2)(C)(ii):**  The method for processing Settlement Class Members' claims and distributing relief to eligible claimants includes well-established, effective procedures for processing claims and efficiently distributing the Net Settlement Fund.  Here, JND Legal Administration

15

("JND"), the Claims Administrator selected by Lead Counsel (subject to Court approval), will process claims under the guidance of Lead Counsel, allow claimants an opportunity to cure any claim deficiencies or request the Court to review their claim denial, and, lastly, mail or wire Authorized Claimants their *pro rata* share of the Net Settlement Fund (per the Plan of Allocation), after Court approval. Claims processing, like the method proposed here, is standard in securities class action settlements. It has been long found to be effective, as well as necessary, insofar as neither Plaintiffs nor Defendants possess the individual investor trading data required for a claims-free process to distribute the Net Settlement Fund.[13]

**Rule 23(e)(2)(C)(iii):** As disclosed in the Notice, Lead Counsel will be applying for a percentage of the common fund fee award in an amount not to exceed 33⅓% to compensate them for the services they have rendered on behalf of the Settlement Class. A proposed attorneys' fee of up to 33⅓% of the Settlement Fund (which, by definition, includes interest earned on the Settlement Amount) is reasonable in light of the work performed and the results obtained. It is also consistent with awards in similar complex class action cases. *See Maley v. Del Global Tech. Corp.*, 186 F. Supp. 2d 358, 370 (S.D.N.Y. 2002) ("Petitioners' request [for 33⅓% of the Class Settlement Fund] falls comfortably within the range of fees typically awarded in securities class actions."). More importantly, approval of the requested attorneys' fees is separate from approval of the Settlement, and the Settlement may not be terminated based on any ruling with respect to attorneys' fees. *See* Stipulation ¶16.

**Rule 23(e)(2)(C)(iv):** The Parties have entered into a confidential agreement that establishes certain conditions under which Defendants may terminate the Settlement if Settlement Class

---

[13] This is not a claims-made settlement. If the Settlement is approved, Defendants will not have any right to the return of a portion of the Settlement based on the number or value of the claims submitted. *See* Stipulation ¶14.

16

Members who collectively have damages equating to a certain dollar amount under the Plan of Allocation request exclusion (or "opt out") from the Settlement. "This type of agreement is standard in securities class action settlements and has no negative impact on the fairness of the Settlement." *Christine Asia Co., Ltd. v. Yun Ma*, 2019 WL 5257534, at \*15 (S.D.N.Y. Oct. 16, 2019).

> **5.     The Settlement Treats All Members Of The Class Equitably Relative To Each Other**

Rule 23(e)(2)(D) requires courts to evaluate whether the settlement treats class members equitably relative to one another. The Settlement easily satisfies this standard. Under the proposed Plan of Allocation, detailed on pp. 12-20 of the proposed Notice (Ex. A-1 to Ex. 1 of the Solish Decl.), each Authorized Claimant will receive his, her, or its *pro rata* share of the Net Settlement Fund. Specifically, an Authorized Claimant's *pro rata* share shall be the Authorized Claimant's Recognized Claim divided by the total of Recognized Claims of all Authorized Claimants, multiplied by the total amount in the Net Settlement Fund.[14] Courts have repeatedly approved similar plans. *See In re Citigroup, Inc. Sec. Litig.*, 965 F. Supp. 2d 369, 386-87 (S.D.N.Y. 2013); *In re Marsh ERISA Litig.*, 265 F.R.D. 128, 145-46 (S.D.N.Y. 2010).

> **6.     The Remaining *Grinnell* Factors Are Neutral Or Weigh In Favor Of Preliminary Approval**

*Grinnell* also outlined several factors that are not coextensive with Rule 23(e)(2)'s new factors. These factors, viewed in light of the Rule 23(e)(2) factors identified above, support preliminary approval.

**The Stage of the Proceedings and the Amount of Discovery Completed:** This factor examines "whether the parties had adequate information about their claims such that their counsel

---

[14] Eagle Call and Put Option trading accounted for less than 0.5% of total dollar trading volume for Eagle Securities during the Settlement Class Period. As such, claims for Eagle Call and Put Option transactions are allotted 0.5% of the Settlement pursuant to the Plan of Allocation.

can intelligently evaluate the merits of plaintiff's claims, the strengths of the defenses asserted by defendants, and the value of plaintiffs' causes of action for purposes of settlement." *In re Bear Stearns Cos., Inc. Sec., Deriv., & ERISA Litig*., 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012). Here, Plaintiffs conducted an extensive investigation into Eagle, including, *inter alia*: interviewing former employees and third parties; analyzing the Company's myriad SEC filings, the Aurelius Report, court filings, deed records and UCC filings; and consulting with accounting, banking, loss causation and damages experts. Moreover, the Parties submitted substantial briefing relating to the motion to dismiss, and also exchanged detailed mediation briefs. The fact that there has been no formal discovery in the Action does not weigh against preliminary approval, especially given the PSLRA discovery stay in securities class actions. *See, e.g.*, *In re IMAX Sec. Litig.*, 283 F.R.D. 178, 190 (S.D.N.Y. 2012) ("The threshold necessary to render the decisions of counsel sufficiently well informed, however, is not an overly burdensome one to achieve—indeed, formal discovery need not have necessarily been undertaken yet by the parties.").

**The Ability of Defendants to Withstand a Greater Judgment:** "Courts have recognized that the defendant's ability to pay is much less important than other factors, especially where 'the other *Grinnell* factors weigh heavily in favor of settlement approval.'" *In re Metlife Demutualization Litig.*, 689 F. Supp. 2d 297, 339 (E.D.N.Y. 2010). While Defendants have D&O insurance available to contribute to towards a settlement of this Action, the amount was rapidly wasting as a result of multiple government investigations, as well as a derivative action premised upon the allegations in this litigation. Under these circumstances, ability to pay is not a factor in the settlement and does not weigh either for or against approval. *In re AOL Time Warner, Inc*., 2006 WL 903236, at *12 (S.D.N.Y. Apr. 6, 2006) ("the mere ability to withstand a greater judgment does not suggest that the Settlement is unfair.").

18

### B.     Certification Of The Settlement Class Is Appropriate

#### 1.     The Settlement Class Satisfies The Requirements Of Rule 23(a)

**Numerosity:** "In securities fraud class actions relating to publicly owned and nationally listed corporations, the numerosity requirement may be satisfied by a showing that a large number of shares were outstanding and traded during the relevant period." *In re Sadia, S.A. Sec. Litig.*, 269 F.R.D. 298, 304 (S.D.N.Y. 2010). Here, the Settlement Class is comprised of purchasers of Eagle common stock and/or Eagle call options, and/or those who wrote Eagle put options. During the Settlement Class Period, Eagle actively traded on the NASDAQ with millions of shares traded in that period. Accordingly, there are likely to be hundreds, if not thousands of Settlement Class Members, thereby satisfying numerosity. *See id.* ("Sufficient numerosity can be presumed at a level of forty members or more.").

**Common Questions:** Securities fraud cases like this one easily meet the commonality requirement, which is satisfied where it is alleged that "putative class members have been injured by similar material misrepresentations and omissions." *In re Pfizer Inc. Sec. Litig.*, 282 F.R.D. 38, 44 (S.D.N.Y. 2012). Here, questions of law and fact regarding Plaintiffs' Exchange Act claims will be common to the Settlement Class, including whether Defendants' representations to the investing public during the Settlement Class Period were "materially misleading." These questions are susceptible to common answers because their resolution does not differ based on the plaintiff's identity. Because these questions of law and fact are common to all members of the Settlement Class, the commonality requirement of Rule 23(a)(2) is met. *In re MF Glob. Holdings Ltd. Inv. Litig.*, 310 F.R.D. 230, 236 (S.D.N.Y. 2015).

**Typicality:** Typicality is established where "each class member's claim arises from the same course of events, and each class member makes similar legal arguments to prove the defendant's liability." *Cent. States SE & SW Areas Health and Welfare Fund v. Merck-Medco Managed Care,*

19

*L.L.C.*, 504 F.3d 229, 245 (2d Cir. 2007).  Plaintiffs' claims are typical of the Settlement Class because their claims are based on the alleged misrepresentations and omissions.  Thus, any Settlement Class Member's claim arising from these misrepresentations and omissions will necessarily rely on the same course of events.  *See In re Twinlab Corp. Sec. Litig.*, 187 F. Supp. 2d 80, 83 (E.D.N.Y. 2002) (typicality is met where all class members were allegedly harmed by the same course of conduct, namely "the distribution of false and misleading information which artificially inflated the stock").

**Adequacy:**  As explained in Sec. V.A.1., *supra*, Plaintiffs and Lead Counsel are adequate representatives.  First, Plaintiffs and Settlement Class Members purchased Eagle common stock, call options and/or wrote put options during the Settlement Class Period, and they were all injured by the Defendants' allegedly materially false statements and omissions.  Plaintiffs were highly motivated to recover as much as possible in damages for the Settlement Class in light of their significant losses.  *Patriot*, 828 Fed.Appx. at 764.  If Plaintiffs were to prove their claims at trial, they would also prove the Settlement Class's claims.  *See Amgen, Inc. v. Conn. Ret. Plans & Trust Funds*, 133 S. Ct. 1184, 1191 (2013) (investor class "will prevail or fail in unison" because claims are based on common misrepresentations and omissions).

Second, Plaintiffs have demonstrated their commitment to this litigation by retaining qualified counsel.  *See Wilson v. LSB Indus., Inc.*, 2018 WL 3913115, at *18 (S.D.N.Y. Aug. 13, 2018) (appointing GPM as class counsel and noting that "GPM has had extensive experience serving as lead or co-lead counsel in class action securities litigation."); *Cheng Jiangchen v. Rentech, Inc.*, 2019 WL 5173771, at *5 (C.D. Cal. Oct. 10, 2019) ("[GPM] has significant experience in securities class action lawsuits.").

20

### 2.      The Settlement Class Satisfies The Requirements Of Rule 23(b)(3)

**Common Questions Predominate:** Predominance exists where the questions that are capable of common proof are "more substantial than the issues subject only to individualized proof." *Roach v. T.L. Cannon Corp.*, 778 F.3d 401, 405 (2d Cir. 2015). The Supreme Court has noted that predominance is a "test readily met in certain cases alleging . . . securities fraud." *Amchem Prod., Inc. v. Windsor*, 521 U.S. 591, 625, 117 S. Ct. 2231, 138 L. Ed. 2d 689 (1997).

Here, there are common questions of law and fact involving violations of the securities laws based on a common course of conduct directed at the entire Settlement Class, and these questions predominate over any individualized questions that may exist. *See In re Vivendi Universal, S.A. Sec. Litig.*, 242 F.R.D. 76, 90 (S.D.N.Y. 2007) ("The common issues in this action include whether defendants issued materially false and misleading statements . . . , scienter, reliance, and causation. All plaintiffs will rely on the same or substantially similar documents, statements, and legal theories to prove the defendants' liability."). The predominance requirement has, therefore, been satisfied. *See id.*; *see also AOL Time Warner*, 2006 WL 903236, at *5 (finding predominance requirement readily met because "[a]llegations of [d]efendants' misrepresentations and the improper inflation of AOL's accounting revenues underlie the factual and legal claims of every Class Member").

**Class Action Is Superior:** Rule 23(b)(3) sets forth non-exhaustive factors to be considered in determining whether class certification is the superior method of litigation: "(A) the class members' interests in individually controlling the prosecution . . . of separate actions; (B) the extent and nature of any litigation concerning the controversy already begun by . . . class members; (C) the desirability or undesirability of concentrating the litigation of the claims in the particular forum; and (D) the likely difficulties in managing a class action." FED. R. CIV. P. 23(b)(3). Securities suits easily satisfy the superiority requirement of Rule 23(b)(3), because "the alternatives are either no

21

recourse for thousands of stockholders" or "a multiplicity and scattering of suits with the inefficient administration of litigation which follows in its wake." *MF Glob.*, 310 F.R.D. at 239.

Here, there is no evidence that putative class members desire to bring separate individual actions. Indeed, without class actions, investors who have been defrauded by securities law violations, but whose losses do not run into several millions of dollars, would likely have no practical recourse. *See Phillips Petroleum Co. v. Shutts*, 472 U.S. 797, 809 (1985) ("most of the plaintiffs would have no realistic day in court if a class action were not available"). Furthermore, it is desirable to concentrate the claims in this Court as it is already familiar with the factual and legal issues in the case. Finally, because this is a request for class certification for settlement purposes only, the Court need not inquire as to whether the case, if tried, would present management problems. *See Amchem*, 521 U.S. at 620.

### 3. The Court Should Appoint Lead Counsel As Counsel For The Settlement Class

A court that certifies a class must also appoint class counsel. *See* FED. R. CIV. P. 23(g). The Rule directs the Court to consider: "(1) the work counsel has done in identifying or investigating potential claims in the action; (2) counsel's experience in handling class actions, other complex litigation, and the types of claims asserted in the action; (3) counsel's knowledge of the applicable law; and (4) the resources that counsel will commit to representing the class." FED. R. CIV. P. 23(g)(1)(A). GPM was appointed Lead Counsel in November 2019. ECF No. 33.

As set forth above in Sec. III, *supra*, Lead Counsel devoted substantial time, effort, and resources to identifying, investigating, litigating and settling the claims in this matter. Moreover, as explained in Sec. V.A.1., *supra*, Lead Counsel are experienced in handling class action litigation and are highly familiar with securities class action litigation. For these reasons, among others, Plaintiffs respectfully request that the Court appoint Lead Counsel to serve as Class Counsel. *See Wilson*,

22

2018 WL 3913115, at *18 (appointing GPM as class counsel).

**C.      The Court Should Approve The Proposed Form And Method of Notice To The Class**

As outlined in the proposed Preliminary Approval Order, if the Court grants preliminary approval the Claims Administrator will mail the Notice and Claim Form (Exhibits A-1 and A-2 to the Preliminary Approval Order) to all Settlement Class Members who can be identified with reasonable effort, including through the stock transfer records maintained by Eagle during the Settlement Class Period.[15]  The Claims Administrator will also utilize a proprietary list of the largest and most common U.S. banks, brokerage firms, and nominees that purchase securities on behalf of beneficial owners to facilitate the dissemination of notice.  The Notice will advise Settlement Class Members of: (i) the pendency of the class action; (ii) the essential terms of the Settlement; and (iii) information regarding Lead Counsel's application for attorneys' fees and expenses.  The Notice also will provide specifics on the date, time and place of the Settlement Hearing, and set forth the procedures for objecting to the Settlement, the proposed Plan of Allocation and/or the application for attorneys' fees and expenses, and the procedure for requesting exclusion from the Settlement Class. In addition to the mailing of the Notice and Claim Form, the Summary Notice will be published in *Investor's Business Daily* and transmitted over the *PR Newswire*.

The proposed form and manner of providing notice to the Settlement Class satisfy the requirements of due process, Rule 23, and the PSLRA.  *See, e.g., City of Providence v. Aeropostale, Inc.*, 2014 WL 1883494, at *2 (S.D.N.Y. May 9, 2014); *In re Warner Chilcott Ltd. Sec. Litig.*, 2008

---

[15] Plaintiffs request that the Court approve retention of JND as the claims administrator for this case. JND is an experienced claims administrator with significant experience administering securities settlements.  *See In re Keurig Green Mountain Single-Serve Coffee Anti. Litig.*, 2020 WL 7389330, at *5 (S.D.N.Y. Dec. 16, 2020) (appointing JND to serve as claims administrator and stating: "JND's principals have more than 75 years-worth of combined class action legal administration experience, and JND has handled some of the largest recent settlement administration issues, including the Equifax Data Breach Settlement.").

WL 5110904, at *3 (S.D.N.Y. Nov. 20, 2008). Accordingly, Plaintiffs submit that the proposed notice and related procedures are appropriate and should be approved.

## VI.   PROPOSED SCHEDULE OF SETTLEMENT EVENTS

Plaintiffs respectfully propose the schedule set forth below for Settlement-related events. The specific timing of events is determined by the date on which the Preliminary Approval Order is entered and the date on which the Settlement Hearing is scheduled. In order to allow sufficient time for the Notice program, Plaintiffs request that the Court schedule the Settlement Hearing for a date not earlier than 120 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience.

| Event | Proposed Timing |
|---|---|
| Deadline for mailing the Notice to Settlement Class Members (which date shall be the "Notice Date") (Preliminary Approval Order ¶ 7) | Not later than 20 business days after entry of Preliminary Approval Order |
| Deadline for publishing the Summary Notice (Preliminary Approval Order ¶ 7) | Not later than 10 business days after the Notice Date |
| Deadline for filing of papers in support of final approval of the Settlement, Plan of Allocation, and Lead Counsel's application for attorneys' fees and expenses (Preliminary Approval Order ¶ 26) | Not later than 35 calendar days prior to the Settlement Hearing |
| Deadline for receipt of exclusion requests and objections (Preliminary Approval Order ¶¶ 13, 17) | Not later than 21 calendar days prior to the Settlement Hearing |
| Deadline for filing reply papers (Preliminary Approval Order ¶ 26) | 7 calendar days prior to the Settlement Hearing |
| Deadline for submitting Claim Forms (Preliminary Approval Order ¶ 10) | 120 calendar days after the Notice Date |
| Settlement Hearing | Not earlier than 120 calendar days after entry of the Preliminary Approval Order, or at the Court's convenience |

## VII.   PROPOSED DEDUCTIONS FROM THE SETTLEMENT FUND

Pursuant to this Court's Individual Rules and Procedures for Civil Cases, Item III.C.5, Plaintiffs and Lead Counsel respectfully provide the following anticipated deductions from the total

24

Settlement Fund:

| | Amount | Settlement Fund % | Average Per Damaged Share[16] |
|---|---|---|---|
| Settlement Fund Value | **$7,500,000** | **100%** | **$0.37** |
| Claims Administrator Fees, Costs, and Expenses | **$155,000** | **2.10%** | **$0.008** |
| Proposed Attorneys' Fees | **$2,500,000** | **33⅓%** | **$0.124** |
| GPM | $1,750,000 | 23⅓ | $0.087 |
| Labaton Sucharow | $750,000 | 10% | $0.037 |
| Litigation Expenses | **$105,000** | **1.40%** | $0.005 |
| Attorneys' Costs and Expenses | $96,000 | 1.28% | $0.005 |
| Lead Plaintiff PSLRA Reimbursement | $7,500 | 0.10% | $0.0003 |
| Norfolk PSLRA Reimbursement | $1,500 | 0.02% | $0.0001 |
| Broker Reimbursement[17] | **$80,000** | **1.10%** | **$0.004** |
| Estimated Taxes[18] | **$10,000** | **0.13%** | **$0.0005** |
| Anticipated Recovery | **$4,650,000** | **62%** | **$0.23** |
| Anticipated Recovery To Settlement Class Members As A Percentage of Damages | | **1.5% - 17.9%** | |

## VIII.   CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court grant the requested relief.

---

[16] Plaintiffs' damages expert's estimates the conduct at issue in the Action affected approximately 20.2 million shares of Eagle common stock purchased during the Settlement Class Period.

[17] Brokers and nominees may request reimbursement for distributing notices to potential settlement class members.  According to the Claims Administrator, this estimate is considered a "high-end" estimate based on similarly-sized class action settlements.

[18] According to the Claims Administrator, this estimate is considered a "high-end" estimate based on similarly-sized class action settlements.

Dated: June 28, 2021

**GLANCY PRONGAY & MURRAY LLP**

By:  */s/ Leanne H. Solish*
Robert V. Prongay (*pro hac vice*)
Jason L. Krajcer (*pro hac vice*)
Leanne H. Solish (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
        jkrajcer@glancylaw.com
        lsolish@glancylaw.com

*Counsel for Lead Plaintiff and*
*Lead Counsel for the Proposed Settlement Class*

**LABATION SUCHAROW LLP**
Francis P. McConville
140 Broadway, 34th Floor
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: fmcconville@labaton.com

*Counsel for Norfolk County Retirement System*

26

## **CERTIFICATE OF SERVICE**

I hereby certify that on this 28th day of June 2021, a true and correct copy of the foregoing document was served by CM/ECF to the parties registered to the Court's CM/ECF system.

*/s/ Leanne H. Solish*
Leanne H. Solish