12/28/21

United States District Court
Southern District of New York
Clerk of the Court
United States Courthouse
40 Foley Square
New York, NY 10007

Case No., 1:19-cv-06873-LGS

United States District Court,

The court has no choice but to  deny this proposed class action settlement primarily based upon the fact that the defendants have lied to the plaintiffs, this court, and shareholders regarding the claim that they have committed  no wrongdoing. As one example of the wrongdoing,  Larry Bensignor, one of the defendants, recently entered into an agreement with The Federal Reserve Board of Governors on November 8, 2021 ( Docket No. 21-025-B-1, 21-025-E-1 ). This agreement states " Whereas Bensignor, while serving as a senior executive of the Bank, engaged in unsafe and unsound banking practices by failing to ensure that he disclosed, in accordance with the Bank's Code of Conduct, and policies relevant to insider lending, certain information regarding the participation of various parties in certain transactions of the Bank". The other defendants, including the Board of Directors of the Bank, also knew of this and many other instances of illegal activity, and they also failed to disclose as required by the ethics policy and ethics clauses in their employment agreements. I know this as the Bank's white collar criminal defense attorneys questioned me twice about this illegal activity, both in December 2017, and again in April 2020. Additionally, another defendant, Charles Levingston, was served a Wells notice by the SEC ( in 2021 ). A wells notice is issued when the staff of the SEC has made a preliminary determination  to recommend charges, in this case against Levingston. Mr. Levingston has stated in this proposed settlement, along with Bensignor, and all other defendants , that "each of the defendants denies any wrongdoing" ( page 7 ).  This proposed settlement agreement is the result of lies and bad faith negotiations on behalf of all defendants.

 Additionally, the defendants in the recently settled derivative suit, also made false claims of no wrongdoing and also stated that they have always acted  ( need exact quote ) in the best interest of shareholders. Given the SEC Wells notice, as well as the recent determination of the Board of Governors of The Federal Reserve System, we now know that these statements are also lies.

The agreement between Bengisnor and the Board of Governors Of The Federal Reserve System further states " Bensignor shall fully cooperate with and provide substantial assistance to the Board of Governors, including but not limited to the provision of information, testimony, documents, records, and other tangible evidence, in connection with any investigations of the Company, Bank, or other individuals who are or were institution-affiliated parties of the Company or Bank with ting  to any matters relating  to this Order or the related investigation." It is obvious that the Federal Reserve Board is investigating both the Bank and other individuals, certainly the co-defendants in this class action, for additional acts of illegal and unethical behavior, given that they are requiring " Substantial

1

Assistance ".  Additionally, their language stating that Bensignor "...failing to ensure that he disclosed, in accordance with the Bank's Code of Conduct and policies relevant to insider lending, certain information regarding the participation of various parties in certain transactions of the Bank " confirms that there were loans that insiders participated in that were in violation of Regulation O and therefore illegal. The Defendants  claims of no wrong doing is ludicrous. We need to ask all defendants what loans the Board of Governors of the Federal Reserve Board is referencing.

This court needs to ask Mr. Bensignor how he can state no wrongdoing to this Court, yet the Federal Reserve states otherwise. He should also be asked of is entire knowledge of unethical and illegal behavior that was committed at EagleBank. All of the defendants should be asked of their knowledge of illegal and unethical behavior, and also if they are the subject of investigations, SEC wells notices, etc. They should also be asked why they did not report the unethical and unethical behavior when they learned of it. Again, I was questioned by the Bank's attorneys twice, once in December 2017, and again in 2020. In both instances, the topic of discussion was illegal and unethical behavior perpetrated by primarily the defendants in this class action. The Board and CEO were certainly privy to the results of both the internal investigations conducted by the bank, as well as the results of my two forced interviews ( I worked at the Bank from 2004 until shortly after my April 2020 interview ).

As an example, one of the topics of discussion for both of my bank attorney interview was the circumstances surrounding the Bank selling Bank owned property to a trust that was set up for the benefit of Ron Paul's children. The questioning surrounded the questionable underwriting and rubber stamp approval. Selling this property is an act of self-dealing, which is a felony. When I spoke with the SEC in May 2020, they were unaware of this transaction and were surprised to learn that it had happened. I was stunned at their reaction as the ethics policy of the bank required full cooperation with any and all investigating agencies. The SEC had been investigating the bank for a few years at this point, yet no one mentioned this loan. The defendants in this case should be asked when they first spoke with the SEC. If it was prior to May 2020, then by not disclosing this loan, they were in violation of the bank's ethics policy. Additionally, Sarbanes Oxley and NASDAQ listing agreements require that when a public company violates their eithics policy, they must file timely ethics waivers ( I believe in the 8-K ). Of the dozens of ethics policy violations that I know of, I don't believe the bank has ever filed even one waiver. Yet they have always acted in the best interest of shareholders and are telling this court that they have done nothing wrong?

On December 5, 2017, Ron Paul was quoted in the Washington Business Journal as saying that all Aurelius ( the Aurelius report was a report published by an anonymous shortseller in early December 2017 which outlined some of the illegal and unethical behavior perpetrated by the defendants in this case and others ) claims are " 100 percent false " Mr. Paul knew at that time that this statement was not true. Charles Levingston was quoted in the Washington Business Journal, I believe in March 2020, that the Aurelius report is just "unproven allegations". Mr. Levingston knew his statement was not true. On December 5, 2017, Larry Bensignor was quoted in Bisnow as saying EagleBank has fully complied with Regulaton O in any loans is has made to entities associated with its directors". Mr. Bensignor and Mr. Paul ( Mr. Paul was Chairman at the time ) knew this satement to be false. Susan Riel, the current CEO of the Bank and a member of the Board of Directors knew these statements

2

were false ( their attorneys had questioned me about the evidence, and they knew these statements were false ) the day she became CEO, I believe in March 2018, shortly after the departure of Ron Paul. Ms. Riel had a fiduciary duty, along with the Board of Directors, who also knew these public statements to be false, to correct these statements. However, Ms. Riel and the Board of Directors have chosen to hide the truth, in complete violation of the bank's ethics policy as well as the ethics clauses in their employment agreements. One can only assume it is for their own personal financial gain. Ms. Riel has in fact doubled down on her false statements, further stating in the Washington Business Journal on July 21, 2021 that " The Board's top priority is, as it always has been, to act in the best interest of the company and the company's stockholders. I don't understand how not telling the truth, not following the bank's ethics policy, not correcting false and misleading public statements, not enforcing ethics clauses in employment agreements, and lying to the DC Superior Court in the Derivative Settlement and lying to this court, is in the best interest of shareholders. I hope the court chooses to ask her.

Questions to ask Defendants:

Susan Riel,

1) The Bank's attorneys questioned me extensively in December 2017 and again in April 2020 regarding illegal and unethical activity, which amounted to dozens of ethics policy violations. As CEO of the Bank, were you mad aware of the results of these interviews? To date, you have not filed  any  ethics waiver as required by Sarbanes Oxley and NASDAQ, why not?

2) In July 2021 you mad a public statement that stated that the Board has always acted in the best interest of stockholders. How is not filing required ethics waiver in the stockholders best interest? You told the DC Superior Court in your and the Bank's pleading in the derivative suit that you deny and continue to deny all allegations of wrongdoing. Yet the Board of Governors of the Federal Reserve has stated that Larry Bensignor had engaged in "unsafe and unsound banking practices" He is a co-defendant in this case, and you in fact knew of his unsafe and unsound banking practices. Please explain how not disclosing his behavior as required by Sarbanes Oxley and NASDAQ is in the best interest of shareholders. ( If you claim that you were unaware of his activity, then you and the Board have failed miserably at meeting your fiduciary responsibility.

3) Larry Bensignor and Ron Paul retired with full benefits.  I believe Mr. Paul's total was approximately $6 million dollars. Why did you let them retire with full benefits when you know full well that they had violated their ethics clauses in their employment agreements? How was this in the best interest of shareholders?

4) The bank sold property on Brightseat Road it owned to Potomac Investment Trust, a trust for the benefit of Ron Paul's children. Your attorney's questioned me twice about this. Did you know of this transaction? Were you aware this this is self-dealing and is illegal? Did you file the required ethics waivers?

3

5) When I spoke the SEC in May 2020, they were unaware of this transaction. When did you first speak with the SEC? If you spoke with them prior to May 2020, you did not disclose this illegal activity in violation of the bank's ethics policy and the ethics clause in your employment agreement. Why didn't you tell the SEC?

6) When Ron Paul claimed publicly that all Aurelius claims are "100 percent false", and Larry Bensignor stated publicly that EagleBank has fully complied with Regulation O in an loans it has made to entities associated with its directors", you knew these statements to be false. You knew they were false because your attorneys knew they were false based upon their interviews with me. Why didn't you correct these statements? Did you file ethics waivers for these statements as required by Sarbanes Oxley and NASDAQ? Why not?

7) Are you aware that Charles Levingston has been served with a Wells notice by the SEC? Can you explain the nature of this notice? Can you explain how you and your co-defendants in this Class Action Case and also the Derivative Case can claim no wrongdoing whatsoever, when the SEC and the Board of Governors of the Federal Reserve, two Federal Regulatory Agencies of the Bank see it so differently?

8) You have stated for years in your required Federal Filings that the investigations deal with, among other things, the misclassification of loans. Can you explain this? I believe what you call misclassification is referring to the fact that you did not report certain loans as Regulation O, but should have. This statement is misleading at best. Misclassification is just another way of saying that you violated Regulation O.  The Regulations surrounding what loans can be made to insiders are very restrictive and limited I believe to $100,000, with a lien on the insiders primary residence or for college education. None of the loans in question were for these purposes. As an example, the loan the bank made to Potomac Investment Trust, when the Bank sold the trust property it owned ( not only did they sell the trust the property, self-dealing, but they lent the trust the money to do so-Regulation O ). This loan was not classified as a Regulation O loan, as it technically should have been, HOWEVER, since the purpose of this loan was not for primary residence or college education, and was well over $100,000, the bank would have been prohibited from making this loan. So, they did not call it a Regulation O, not a misclassification as you state. Please clarify this? It is illegal for an insider to benefit from things like the sale of this real estate, such as when the bank sold property it owned on Brightseat Rd., in Landover MD to Potomac Investment Trust, a trust that benefitted Ron Paul's children . I believe two of these properties have since been sold by PIT at a profit. This is stealing from shareholders. You knew about, did not report it to the SEC, did not file ethics waivers, and let Ron Paul retire with full benefits. This was a violation of Mr. Paul's and your ethics clauses in your employment  agreements. It was also a violation of the Board of Directors individual ethics clauses in their employment agreements.  How was all of this in the best interest of shareholders.

9) What other instances of illegal and unethical behavior are you aware of?

10) How much has the bank spent to date on  investigations, legal fees, additional employees for greater due diligence, etc., since the publication of the Aurelius Report in December 2017?

**Questions for Ron Paul**

1) How is selling  bank owned property to a trust that is for the benefit of your children in the best interest of shareholders? The trust has since sold some of this property at a profit, correct? This is a violation of Regulation O and also self dealing, which is a felony. The properties were never listed for sale with a realtor and were sold at a discount, and some of the property has since been sold at a profit. If you claim that you had no knowledge of this loan, that is also incorrect. I have evidence that shows your office staff directing the bank to conduct business on behalf of Potomac Investment Trust, when they were not the trustee. The only connection they had to the trust was that they worked for you in your real estate business. Also, the Board of Directors gets a new note report, so you certainly knew about the loan shortly after it was made. Did you, as CEO, file the appropriate ethics waivers? How did the Trust even find out that the bank had property for sale?

2) Mr. Paul, have you been issued a Wells notice by the SEC? What other agencies are investigating you or have filed charges against you for illegal and unethical activity?

3) When did you first speak with the SEC regarding Aurelius report allegations? I told the SEC about the Brightseat Road sale and loan in May 2020. If you spoke with them prior to May 2020, then you failed to disclose the loan and sale, in violation of the bank's ethics policy. What facts about illegal and unethical activity did you notify the SEC about?

4) What other instances of illegal and unethical behavior are you aware of?

**Question for Larry Bensignor**

1) When did you first speak with the SEC and Bank Regulators regarding allegation sin the Aurelius Report? Did you inform them at the time that you had "engaged in unsafe and unsound banking practices"? This was required by the Bank's ethics policy. When you made the false and misleading public statement that " EagleBank has fully complied with Regulation O" , you knew this to be a lie, correct?

2) What other instances of illegal and unethical behavior are you aware of?

**Questions for Charles Levingston**

1) What are the details of the SEC Wells notice? Are you aware that as a part of this setllment agreement, as well as the settlement of the Derivative Suit, ( you are a defendant in both instances ) that you have told both courts that you deny any and all wrongdoing? How is it that the SEC and the Board of Governors of the Federal Reserve see it so differently? Do you still stand behind these statements that you have made?

2) What other instances of illegal and unethical behavior are you aware of?

This proposed settlement agreement robs shareholders of the truth and just compensation for the damages suffered. There is no accountability associated with this Settlement Agreement, which was negotiated in bad faith by the defendants by their continued lying about the facts. Shareholders that choose to participate in this Settlement are doing so without the benefit of the truth. They have been denied the benefit of the truth by the continued lying on behalf of the defendants.

The damages award in this proposed settlement is $7.5 Million and is predicated on illegal and unethical behavior and the continued covering up of the facts of the case. The SEC and the Board of Governors of the Federal Reserve have spent several years investigating, and despite defendants efforts to conceal the truth, they are finally bringing charges against the wrongdoers.

On December 1, 2017 ( when Aurelius was published ), the stock price of EGBN was $66.15. Since December 1, 2017, the S & P index has increased approximately 75%. The stock price of EGBN today is $57.35. If you equate the percentage increase in the S & P increase to the EGBN stock price, the price per share would be over $115.00 per share. This settlement will likely award less than one dollar per share to shareholders. Investors have stuck with this stock based upon the continued lies of the defendants claims of no wrongdoing. The defendants have made sure that they have been personally substantially compensated with large million dollar salaries, options and grants, and large multi-million dollar golden parachutes, all the while lying to shareholders about the unethical and illegal activity.

Any proposed settlement should include bringing wrongdoers to justice and the exercise of ethics clauses in all employment agreements. Additionally, any monetary award to shareholders should be at least ten times the proposed amount given the severity of the lying and cover-up.

I am happy to share with the court additional document evidence as well as direct testimony via telephone or teleconference during the hearing.

The approval of the proposed settlement would be a further injustice at the expense of shareholders, and would reward illegal and unethical activity that has been perpetrated by the defendants.

Tim Hamilton

504 Taylor Court
Cranberry Twp., PA 16066
301-452-8644
Hamilton16066@gmail.com

Note:

The example of self- dealing and Regulation O Violations I referenced are for property located at :

Bethesda Leasing, LLC is/was a EGBN bank owned entity. They sold the properties to Potomac Investment Trust, a Trust that benefitted Ron Paul's children. 1833 and 1835 have been sold by Potomac Investment Trust at a profit.

Attachments:

1) Board of Governors of The Federal Reserve System Order of Prohibition against Larry Bensignor.
2) SDAT real property searches for 1833. 1835. And 1875 Brightseat Road, Landover, MD ( sale of bank owned property to Potomac Investment Trust ).

UNITED STATES OF AMERICA
BEFORE THE
BOARD OF GOVERNORS OF THE FEDERAL RESERVE SYSTEM
WASHINGTON, D.C.

| | |
|---|---|
| In the Matter of<br><br>LAURENCE E. BENSIGNOR,<br><br>A former institution-affiliated party of Eagle Bancorp, Inc., and EagleBank, Bethesda, Maryland, a state-member bank. | Docket No.   21-025-B-I<br>                    21-025-E-I<br><br>Order of Prohibition Issued Upon Consent Pursuant to Sections 8(b) and 8(e) of the Federal Deposit Insurance Act, as Amended |

WHEREAS, the Board of Governors of the Federal Reserve System (the "Board of Governors"), pursuant to sections 8(b)(1) and 8(e) of the Federal Deposit Insurance Act, as amended (the "FDI Act"), 12 U.S.C. §§ 1818(b)(1) and 1818(e), issues this Order of Prohibition (this "Order") upon the consent of Respondent Laurence E. Bensignor ("Bensignor"), a former institution-affiliated party, as defined in sections 3(u) and 8(b)(3) of the FDI Act, 12 U.S.C. §§ 1813(u) and 1818(b)(3), of Eagle Bancorp, Inc. (the "Company") and EagleBank (the "Bank"), a state-member bank;

WHEREAS, Bensignor was employed by the Company and Bank from April 2010 to March 2018, and served as Executive Vice President and General Counsel of the Company and Bank from February 2012 to March 2018;

WHEREAS, Bensignor, while serving as a senior executive of the Bank, engaged in unsafe and unsound banking practices by failing to ensure that he disclosed, in accordance with the Bank's Code of Conduct and policies relevant to insider lending, certain information regarding the participation of various parties in certain transactions of the Bank;

WHEREAS, Bensignor is retired and no longer involved in the banking industry; and

WHEREAS, by affixing his signature hereunder, Bensignor has consented to the issuance of this Order by the Board of Governors and has agreed to comply with each and every provision of this Order, and has waived any and all rights he might have pursuant to 12 U.S.C. § 1818, 12 C.F.R. Part 263, or otherwise:  (a) to the issuance of a notice of intent to prohibit on any other matter implied or set forth in this Order; (b) to a hearing for the purpose of taking evidence with respect to any matter implied or set forth in this Order; (c) to obtain judicial review of this Order or any provision hereof; and (d) to challenge or contest in any manner the basis, issuance, terms, validity, effectiveness, or enforceability of this Order or any provision hereof.

NOW THEREFORE, before the filing of any notices, or the taking of any testimony or adjudication of or finding on any issue of fact or law herein, and without Bensignor's admitting or denying any allegation made or implied by the Board of Governors in connection herewith, and solely for the purpose of settling this matter without a formal proceeding being filed and without the necessity for protracted litigation or extended litigation,

IT IS HEREBY ORDERED that:

1.　　Bensignor, without the prior written approval of the Board of Governors and, where necessary pursuant to section 8(e)(7)(B) of the FDI Act, 12 U.S.C. § 1818(e)(7)(B), another federal financial institutions regulatory agency, is hereby and henceforth prohibited from:

　　　　a.　　participating in any manner in the conduct of the affairs of any institution or agency specified in Section 8(e)(7)(A) of the FDI Act, 12 U.S.C. § 1818(e)(7)(A), including, but not limited to, any insured depository institution or any holding company of an insured depository institution, or any subsidiary of such holding company, or any foreign bank or company

2

to which subsection (a) of 12 U.S.C. § 3106 applies and any subsidiary of such foreign bank or company;

b.    soliciting, procuring, transferring, attempting to transfer, voting or attempting to vote any proxy, consent, or authorization with respect to any voting rights in any institution described in section 8(e)(7)(A) of the FDI Act, 12 U.S.C. § 1818(e)(7)(A);

c.    violating any voting agreement previously approved by any federal banking agency; or

d.    voting for a director, or serving or acting as an institution-affiliated party, as defined in sections 3(u) and 8(b)(3) of the FDI Act, 12 U.S.C. §§ 1813(u) and 1818(b)(3), such as an officer, director or employee, in any institution described in section 8(e)(7)(A) of the FDI Act, 12 U.S.C. § 1818(e)(7)(A).

2.    Bensignor shall fully cooperate with and provide substantial assistance to the Board of Governors, including but not limited to the provision of information, testimony, documents, records, and other tangible evidence, in connection with any investigations of the Company, Bank, or other individuals who are or were institution-affiliated parties of the Company or Bank with respect to any matters relating to this Order or the related investigation.

3.    All communications regarding this Order shall be addressed to:

a.    Richard M. Ashton, Esq.
Deputy General Counsel
David Williams, Esq.
Associate General Counsel
Board of Governors of the Federal Reserve System
20th & C Streets, N.W.
Washington, DC 20551

3

b.    Laurence E. Bensignor
Attn: D. Jean Veta
Covington & Burling, LLP
One CityCenter, 850 Tenth Street, NW
Washington, DC 20001-4956

4.    Any violation of this Order shall separately subject Bensignor to appropriate civil or criminal penalties, or both, under sections 8(i) and (j) of the FDI Act, 12 U.S.C. §§ 1818(i) and (j).

5.    The provisions of this Order shall not bar, estop, or otherwise prevent the Board of Governors, or any other Federal or state agency or department, from taking any other action affecting Bensignor; provided, however, that the Board of Governors shall not take any further action against Bensignor on any matters concerning or arising from the matters addressed by this Order based upon facts presently known by the Board of Governors. This release and discharge shall not preclude or affect (i) any right of the Board of Governors to determine and ensure compliance with this Order, or (ii) any proceedings brought by the Board of Governors to enforce the terms of this Order.

6.    Each provision of this Order shall remain fully effective and enforceable until expressly stayed, modified, terminated, or suspended in writing by the Board of Governors.

4

By order of the Board of Governors of the Federal Reserve System, effective this 8th day of November 2021.

BOARD OF GOVERNORS OF THE
FEDERAL RESERVE SYSTEM

/s/ Laurence E. Bensignor
Laurence E. Bensignor

By:      /s/ Ann E. Misback
Ann E. Misback
Secretary of the Board

Real Property Data Search

Search Result for PRINCE GEORGE'S COUNTY

| View Map | View GroundRent Redemption | View GroundRent Registration |
|---|---|---|

**Special Tax Recapture:** None

**Account Identifier:** District - 13 Account Number - 3862836

### Owner Information

| | | | |
|---|---|---|---|
| **Owner Name:** | TPSQUARED LLC | **Use:** | COMMERCIAL CONDOMINIUM |
| | | **Principal Residence:** | NO |
| **Mailing Address:** | 20635 SIBBALD SQUARE AVE | **Deed Reference:** | /42573/ 00442 |
| | ASHBURN VA 20147- | | |

### Location & Structure Information

| | | |
|---|---|---|
| **Premises Address:** | 1833 BRIGHTSEAT RD LANDOVER 20785-0000 CONDO UNIT: 1833 | **Legal Description:** |

| Map: | Grid: | Parcel: | Neighborhood: | Subdivision: | Section: | Block: | Lot: | Assessment Year: | Plat No: | 219039 |
|---|---|---|---|---|---|---|---|---|---|---|
| 0060 | 00C3 | 0000 | 10013.17 | 5751 | | | | 2021 | Plat Ref: | |

**Town:** None

| Primary Structure Built | Above Grade Living Area | Finished Basement Area | Property Land Area | County Use |
|---|---|---|---|---|
| 1990 | 1,142 SF | | 4,492 SF | 067 |

| Stories | Basement | Type | Exterior | Quality | Full/Half Bath | Garage | Last Notice of Major Improvements |
|---|---|---|---|---|---|---|---|
| | | OFFICE CONDOMINIUM | / | | | | |

### Value Information

| | Base Value | Value As of 01/01/2021 | Phase-in Assessments As of 07/01/2021 | As of 07/01/2022 |
|---|---|---|---|---|
| Land: | 43,900 | 43,900 | | |
| Improvements | 81,700 | 81,700 | | |
| Total: | 125,600 | 125,600 | 125,600 | 125,600 |
| Preferential Land: | 0 | 0 | | |

### Transfer Information

| | | |
|---|---|---|
| **Seller:** POTOMAC INVESTMENT TRUST | **Date:** 10/02/2019 | **Price:** $262,660 |
| **Type:** ARMS LENGTH MULTIPLE | **Deed1:** /42573/ 00442 | **Deed2:** |
| **Seller:** BETHESDA LEASING LLC | **Date:** 12/13/2016 | **Price:** $225,000 |
| **Type:** ARMS LENGTH MULTIPLE | **Deed1:** /38856/ 00329 | **Deed2:** |
| **Seller:** FP ONE LLC | **Date:** 03/31/2016 | **Price:** $75,000 |
| **Type:** NON-ARMS LENGTH OTHER | **Deed1:** /38052/ 00132 | **Deed2:** |

### Exemption Information

| Partial Exempt Assessments: | Class | 07/01/2021 | 07/01/2022 |
|---|---|---|---|
| County: | 000 | 0.00 | |
| State: | 000 | 0.00 | |
| Municipal: | 000 | 0.00|0.00 | 0.00|0.00 |

**Special Tax Recapture:** None

### Homestead Application Information

**Homestead Application Status:** No Application

### Homeowners' Tax Credit Application Information

**Homeowners' Tax Credit Application Status:** No Application    **Date:**

Real Property Data Search

Search Result for PRINCE GEORGE'S COUNTY

| View Map | View GroundRent Redemption | View GroundRent Registration |
|---|---|---|

**Special Tax Recapture:** None

**Account Identifier:** District - 13 Account Number - 3862844

### Owner Information

| | | | |
|---|---|---|---|
| **Owner Name:** | TPSQUARED LLC | **Use:** **Principal Residence:** | COMMERCIAL CONDOMINIUM NO |
| **Mailing Address:** | 20635 SIBBALD SQUARE AVE | **Deed Reference:** | /42573/ 00442 |
| | ASHBURN VA 20147- | | |

### Location & Structure Information

| | | |
|---|---|---|
| **Premises Address:** | 1835 BRIGHTSEAT RD LANDOVER 20785-0000 CONDO UNIT: 1835 | **Legal Description:** |

| Map: | Grid: | Parcel: | Neighborhood: | Subdivision: | Section: | Block: | Lot: | Assessment Year: | Plat No: | 219039 |
|---|---|---|---|---|---|---|---|---|---|---|
| 0060 | 00C3 | 0000 | 10013.17 | 5751 | | | | 2021 | Plat Ref: | |

**Town:** None

| Primary Structure Built | Above Grade Living Area | Finished Basement Area | Property Land Area | County Use |
|---|---|---|---|---|
| 1990 | 1,142 SF | | 4,492 SF | 067 |

| Stories | Basement | Type | Exterior | Quality | Full/Half Bath | Garage | Last Notice of Major Improvements |
|---|---|---|---|---|---|---|---|
| | | OFFICE CONDOMINIUM | / | | | | |

### Value Information

| | Base Value | Value As of 01/01/2021 | Phase-in Assessments As of 07/01/2021 | As of 07/01/2022 |
|---|---|---|---|---|
| Land: | 43,900 | 43,900 | | |
| Improvements | 81,700 | 81,700 | | |
| Total: | 125,600 | 125,600 | 125,600 | 125,600 |
| Preferential Land: | 0 | 0 | | |

### Transfer Information

| | | |
|---|---|---|
| **Seller:** POTOMAC INVESTMENT TRUST | **Date:** 10/02/2019 | **Price:** $262,660 |
| **Type:** ARMS LENGTH MULTIPLE | **Deed1:** /42573/ 00442 | **Deed2:** |
| **Seller:** BETHESDA LEASING LLC | **Date:** 12/13/2016 | **Price:** $225,000 |
| **Type:** ARMS LENGTH MULTIPLE | **Deed1:** /38856/ 00329 | **Deed2:** |
| **Seller:** FP ONE LLC | **Date:** 03/31/2016 | **Price:** $75,000 |
| **Type:** NON-ARMS LENGTH OTHER | **Deed1:** /38052/ 00137 | **Deed2:** |

### Exemption Information

| Partial Exempt Assessments: | Class | 07/01/2021 | 07/01/2022 |
|---|---|---|---|
| County: | 000 | 0.00 | |
| State: | 000 | 0.00 | |
| Municipal: | 000 | 0.00|0.00 | 0.00|0.00 |

**Special Tax Recapture:** None

### Homestead Application Information

**Homestead Application Status:** No Application

### Homeowners' Tax Credit Application Information

**Homeowners' Tax Credit Application Status:** No Application    **Date:**

Real Property Data Search

Search Result for PRINCE GEORGE'S COUNTY

| View Map | View GroundRent Redemption | View GroundRent Registration |
|---|---|---|

**Special Tax Recapture:** None

**Account Identifier:**    **District -** 13 **Account Number -** 3862976

### Owner Information

| Owner Name: | POTOMAC INVESTMENT TRUST | Use:<br>Principal Residence: | COMMERCIAL CONDOMINIUM<br>NO |
|---|---|---|---|
| Mailing Address: | SUITE 300<br>4416 EAST WESTY HWY<br>BETHESDA MD 20814- | Deed Reference: | /38856/ 00329 |

### Location & Structure Information

| Premises Address: | 1875 BRIGHTSEAT RD<br>LANDOVER 20785-0000<br>CONDO UNIT: 1875 | Legal Description: | |
|---|---|---|---|

| Map: | Grid: | Parcel: | Neighborhood: | Subdivision: | Section: | Block: | Lot: | Assessment Year: | Plat No: | 219039 |
|---|---|---|---|---|---|---|---|---|---|---|
| 0060 | 00C3 | 0000 | 10013.17 | 5751 | | | | 2021 | Plat Ref: | |

**Town:** None

| Primary Structure Built | Above Grade Living Area | Finished Basement Area | Property Land Area | County Use |
|---|---|---|---|---|
| 1990 | 1,139 SF | | 4,480 SF | 067 |

| Stories | Basement | Type | Exterior | Quality | Full/Half<br>Bath | Garage | Last Notice of Major<br>Improvements |
|---|---|---|---|---|---|---|---|
| | | OFFICE<br>CONDOMINIUM | / | | | | |

### Value Information

| | Base Value | Value<br>As of<br>01/01/2021 | Phase-in Assessments<br>As of<br>07/01/2021 | As of<br>07/01/2022 |
|---|---|---|---|---|
| Land: | 43,800 | 43,800 | | |
| Improvements | 81,400 | 81,400 | | |
| Total: | 125,200 | 125,200 | 125,200 | 125,200 |
| Preferential Land: | 0 | 0 | | |

### Transfer Information

| Seller: BETHESDA LEASING LLC | Date: 12/13/2016 | Price: $225,000 |
|---|---|---|
| Type: ARMS LENGTH MULTIPLE | Deed1: /38856/ 00329 | Deed2: |
| Seller: FP ONE LLC | Date: 03/31/2016 | Price: $75,000 |
| Type: NON-ARMS LENGTH OTHER | Deed1: /38052/ 00142 | Deed2: |
| Seller: NINETY FIVE OFFICE PARK LLC | Date: 06/15/2007 | Price: $212,380 |
| Type: ARMS LENGTH IMPROVED | Deed1: /00000/ 00000 | Deed2: |

### Exemption Information

| Partial Exempt Assessments: | Class | 07/01/2021 | 07/01/2022 |
|---|---|---|---|
| County: | 000 | 0.00 | |
| State: | 000 | 0.00 | |
| Municipal: | 000 | 0.00|0.00 | 0.00|0.00 |

**Special Tax Recapture:** None

### Homestead Application Information

**Homestead Application Status:** No Application

### Homeowners' Tax Credit Application Information

**Homeowners' Tax Credit Application Status:** No Application     **Date:**