**UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHIVA STEIN, Individually and On Behalf of All Others Similarly Situated,<br><br>Plaintiff,<br><br>v.<br><br>EAGLE BANCORP, INC., SUSAN G. RIEL, RONALD D. PAUL, CHARLES D. LEVINGSTON, JAMES H. LANGMEAD, and LAURENCE E. BENSIGNOR,<br><br>Defendants. | Case No. 1:19-cv-06873-LGS |

**REPLY MEMORANDUM OF LAW IN SUPPORT OF: (I) PLAINTIFFS' MOTION FOR FINAL APPROVAL OF CLASS ACTION SETTLEMENT AND PLAN OF ALLOCATION; AND (II) LEAD COUNSEL'S MOTION FOR AN AWARD OF ATTORNEYS' FEES AND REIMBURSEMENT OF LITIGATION EXPENSES**

# **TABLE OF CONTENTS**

I. INTRODUCTION ................................................................................................................. 1

II. THE SETTLEMENT CLASS'S REACTION SUPPORTS APPROVAL OF THE SETTLEMENT, PLAN OF ALLOCATION, AND THE REQUESTED ATTORNEYS' FEES AND LITIGATION EXPENSES ............................................................................ 2

    A. The Court-Approved Notice Program ................................................................. 2

    B. The Settlement Class's Reaction Supports Approval Of The Settlement, Plan Of Allocation, And Fee And Expense Request ............................................. 3

III. THE OBJECTION SHOULD BE OVERRULED ............................................................. 6

    A. The Settlement Amount Is Fair And Reasonable Under The Circumstances And It Is Not Against Public Policy For Defendants To Deny Wrongdoing ..................... 6

    B. The Existence Of Government Investigations Does Not Negatively Impact The Settlement Or Guarantee Victory In This Action ................................................. 11

    C. Plaintiffs Are Private Litigants, Not Prosecutors Or Regulators ......................... 13

IV. CONCLUSION .................................................................................................................. 13

# **TABLE OF AUTHORITIES**

CASES

*Carson v. American Brands, Inc.*,
450 U.S. 79 (1981) ........................................................................................................................ 8

*City of Detroit v. Grinnell Corp.*,
495 F.2d 448 (2d Cir. 1974) ................................................................................................... 12, 13

*D'Amato v. Deutsche Bank,*
236 F.3d 78 (2d Cir. 2001) ..................................................................................................... 4, 7, 8

*Eminence Capital, LLC v. Aspeon, Inc.*,
316 F.3d 1048 (9th Cir. 2003) ...................................................................................................... 9

*Exxon Shipping Co. v. Baker*,
554 U.S. 471 (2008) .................................................................................................................... 13

*Fogarazzo v. Lehman Bros.*, Inc.,
2011 WL 671745 (S.D.N.Y. Feb. 23, 2011) ................................................................................. 5

*Goldstein v. MCI Worldcom*,
340 F.3d 238 (5th Cir. 2003) ........................................................................................................ 8

*Gross v. GFI Group, Inc.*,
784 Fed. Appx. 27 (2d Cir. Sept. 13, 2019) .................................................................................. 9

*Hicks v. Stanley*,
2005 WL 2757792 (S.D.N.Y. Oct. 24, 2005) ........................................................................... 7, 8

*In re AOL Time Warner, Inc. Sec. & ERISA Litig.*,
2006 WL 903236 (S.D.N.Y. Apr. 6, 2006) ................................................................................... 4

*In re Austrian and German Bank Holocaust Litig.*,
80 F. Supp. 2d 164 (S.D.N.Y. 2000) ......................................................................................... 7, 8

*In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*,
909 F. Supp. 2d 259 (S.D.N.Y. 2012) .......................................................................................... 9

*In re Cendant Corp. Litig*,
264 F.3d 201 (3d Cir. 2001) ......................................................................................................... 9

*In re Citigroup Inc. Bond Litig.*,
296 F.R.D. 147 (S.D.N.Y. Aug. 20, 2013) ................................................................................... 4

*In re Domestic Air Transp. Antitrust Litig.*,
    148 F.R.D. 297 (N.D. Ga. 1993) ............................................................................... 13

*In re GSE Bonds Antitrust Litig.*,
    2020 WL 3250593 (S.D.N.Y. June 16, 2020) ............................................................ 6

*In re LIBOR-Based Financial Instruments Antitrust Litig.*,
    327 F.R.D. 483 (S.D.N.Y. 2018) ............................................................................. 12

*In re Luxottica Grp. S.p.A. Sec. Litig.*,
    233 F.R.D. 306 (E.D.N.Y. 2006) ............................................................................... 4

*In re Merrill Lynch & Co. Research Reports Sec. Litig.*,
    2007 WL 313474 (S.D.N.Y. Feb. 1, 2007) ................................................................. 4

*In re PaineWebber Ltd. P'Ships, Litig.*,
    171 F.R.D. 104 (S.D.N.Y. 1997) ............................................................................... 7

*In re Rite Aid Corp. Sec. Litig.*,
    396 F.3d 294 (3d Cir. 2005) ....................................................................................... 5

*In re Scientific Atl., Inc. Sec. Litig.*,
    754 F. Supp. 2d 1339 (N.D. Ga. 2010) .................................................................... 10

*In re Signet Jewelers Ltd. Sec. Litig.*,
    2020 WL 4196468 (S.D.N.Y. July 21, 2020) ......................................................... 4, 5

*In re Veeco Instruments Inc. Sec. Litig.*,
    2007 WL 4115808 (S.D.N.Y. Nov. 7, 2007) ............................................................. 5

*In re Veeco Instruments Inc. Sec. Litig.*,
    2007 WL 4115809 (S.D.N.Y. Nov. 7, 2007) ............................................................. 4

*In re WorldCom, Inc. Sec. Litig.*,
    2004 WL 2591402 (S.D.N.Y. Nov. 12, 2004) ......................................................... 11

*Maley v. Del Global Techs. Corp.*,
    186 F. Supp. 2d 358 (S.D.N.Y. 2002) ....................................................................... 5

*Robbins v. Koger Props., Inc.*,
    116 F.3d 1441 (11th Cir. 1997) ................................................................................. 9

*SEC v. Apuzzo*,
    689 F.3d 204 (2d Cir. 2012) .................................................................................... 12

*State Farm Mut. Auto. Ins. Co. v. Campbell*,
  538 U.S. 408 (2003) .................................................................................................. 13

*Sykes v. Harris*,
  2016 WL 3030156 (S.D.N.Y. May 24, 2016) ........................................................... 7

*Taft v. Ackermans*,
  2007 WL 414493 (S.D.N.Y. Jan. 31, 2007) ......................................................... 7, 10

*Thomas v. Albright*,
  139 F.3d 227 (D.C. Cir. 1998) .................................................................................. 10

*Tiro v. Public House Investments, LLC*,
  2013 WL 4830949 (S.D.N.Y. 2013) ........................................................................... 3

*Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*,
  396 F.3d 96 (2d Cir. 2005) .......................................................................................... 3

*Weinberger v. Kendrick*,
  698 F.2d 61 (2d Cir. 1982) ........................................................................................ 11

## STATUTES

15 U.S.C. § 78u-4(a)(4) ................................................................................................. 3, 5

## RULES

Fed. R. Civ. P. 23(e) .......................................................................................................... 8

Court-appointed Lead Plaintiff Danilee Cassinelli, as Trustee of the Danilee Cassinelli Trust DTD 7-23-93 ("Lead Plaintiff"), and additional plaintiff Norfolk County Retirement System (collectively, with Lead Plaintiff, "Plaintiffs"), and their counsel, respectfully submit this memorandum in further support of: (1) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation (ECF Nos. 82-83, 86, the "Final Approval Motion"); and (2) Lead Counsel's Motion for Award of Attorneys' Fees and Reimbursement of Litigation Expenses (ECF Nos. 84-86, the "Fee and Expense Motion").[1] This memorandum updates the Court on the status of the notice program, the Settlement Class's reaction thereto, and explains why the lone objection should be denied.

## I.     INTRODUCTION

The reaction of the Settlement Class confirms that the proposed $7.5 million non-reversionary Settlement is an excellent result. Following an extensive notice program, including notice mailed to over 35,448 potential Settlement Class Members, not a single institutional investor or large shareholder has objected to any aspect of the Settlement, the Plan of Allocation, or the requested fees and expenses.[2] This is particularly meaningful because institutional investors held approximately 78% of Eagle Bancorp's shares available to trade (*i.e.*, the shares

---

[1] Unless otherwise noted, capitalized terms used herein have the meanings ascribed to them in the Stipulation and Agreement of Settlement, dated June 28, 2021 (ECF No. 72-1, the "Stipulation"), or the Declaration of Leanne H. Solish in Support of: (I) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (ECF No. 86, "Solish Decl.").

[2] *See* Supplemental Declaration of Luiggy Segura Regarding: (A) Mailing of the Notice Packet; (B) Report on Requests for Exclusion and Objections Received to Date; and (C) Report on Claims Received to Date ("Suppl. Segura Decl."), attached as Exhibit 1 to the Supplemental Declaration of Leanne H. Solish in Support of: (I) Plaintiffs' Motion for Final Approval of Class Action Settlement and Plan of Allocation; and (II) Lead Counsel's Motion for an Award of Attorneys' Fees and Reimbursement of Expenses (the "Suppl. Solish Decl.") filed concurrently herewith.

1

outstanding less insider holdings) during the Settlement Class Period.

Plaintiffs have not received a single request for exclusion, and only one objection has been filed with the Court. ECF No. 87 (as modified by ECF No. 88) (the "Objection"). The Objection was submitted by Timothy Hamilton ("Mr. Hamilton"), a former Eagle Bancorp, Inc. employee whose objection to the derivative settlement was recently denied by the Honorable Fern Saddler, in the action styled *Wiesberg v. Eagle Bancorp, Inc. et al.*, Case No. 2021 CA 000326 B (D.C. Super. Ct. Oct. 4, 2021). *See* Suppl. Solish Decl., Ex. 2. As demonstrated below, Mr. Hamilton's objection in this Action is without merit and should likewise be overruled.

## II. THE SETTLEMENT CLASS'S REACTION SUPPORTS APPROVAL OF THE SETTLEMENT, PLAN OF ALLOCATION, AND THE REQUESTED ATTORNEYS' FEES AND LITIGATION EXPENSES

### A. The Court-Approved Notice Program

In accordance with the Preliminary Approval Order, as of January 11, 2022, the Court-approved Claims Administrator, JND Legal Administration ("JND"), has disseminated a total of 35,448 Notice Packets to potential Settlement Class Members, brokers, and nominees.[3] Suppl. Segura Decl. ¶2. Moreover, on September 27, 2021, JND caused the Summary Notice to be published once in *Investor's Business Daily* and transmitted once over the *PR Newswire*. ECF No. 86-3, at ¶13 and Ex. B. JND also posted the Notice, Claim Form, Stipulation and Preliminary Approval Order on the dedicated settlement website (http://www.EagleSecuritiesSettlement.com, "Settlement Website"). *Id.*, at ¶15. The Notice, Summary Notice, and Settlement Website all informed Settlement Class Members that the

---

[3] A "Notice Packet" consists of the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice") and the Proof of Claim and Release Form (the "Claim Form").

deadline to submit an objection to the Settlement, Plan of Allocation, or fee and expense application, or to request exclusion from the Settlement Class, was December 30, 2021. *See* ECF No. 86-3, Exs. A (Notice) & B (Summary Notice).

On December 16, 2021, Plaintiffs and Lead Counsel filed their opening papers in support of the Settlement, Plan of Allocation, and fee and expense application, including reimbursement to Lead Plaintiff pursuant to the Private Securities Litigation Reform Act of 1995 ("PSLRA"), 15 U.S.C. § 78u-4(a)(4). The motions were supported by the declarations of Plaintiffs, Plaintiffs' Counsel, and the Claims Administrator. These papers are available on the public docket and were posted to the Settlement Website. *See* ECF Nos. 82-86; Suppl. Segura Decl. at ¶6.

Following this extensive notice process, not a single request for exclusion has been received, and only one objection to the Settlement was filed with the Court. Suppl. Solish Decl. ¶3. There have been no objections to the proposed Plan of Allocation or the Fee and Expense Motion.

> **B.   The Settlement Class's Reaction Supports Approval Of The Settlement, Plan Of Allocation, And Fee And Expense Request**

It is well-settled that the reaction of the class to a settlement is perhaps the most significant factor to be weighed in considering its adequacy. *See Wal-Mart Stores, Inc. v. Visa U.S.A., Inc.*, 396 F.3d 96, 119 (2d Cir. 2005) ("the favorable reaction of the overwhelming majority of class members to the Settlement is perhaps the most significant factor in our *Grinnell* inquiry.").[4] Where, as here, "only a small number of objections are received, that fact can be viewed as indicative of the adequacy of the settlement." *Id.* at 118; *see also Tiro v. Public House Investments, LLC*, 2013 WL 4830949, at *7 (S.D.N.Y. 2013) ("Where relatively few class

---

[4] Unless otherwise indicated, all internal citations, quotation marks, and footnotes are omitted and all emphasis is added.

members opt-out of or object to the settlement, the lack of opposition supports court approval of the settlement."); *In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 156 (S.D.N.Y. Aug. 20, 2013) ("Minimal objections and few requests for exclusion from class members are evidence that a settlement is fair and adequate.").

Plaintiffs and Lead Counsel respectfully submit that the overwhelmingly positive response from the Settlement Class confirms the fairness, adequacy, and reasonableness of the Settlement. *See, e.g.*, *D'Amato v. Deutsche Bank,* 236 F.3d 78, 86-87 (2d Cir. 2001) (holding that the district court properly concluded that 18 objections from a class of 27,883 "weighed in favor of settlement."); *In re Luxottica Grp. S.p.A. Sec. Litig.*, 233 F.R.D. 306, 311 (E.D.N.Y. 2006) ("Lack of objection is strong evidence of the settlement's fairness.").[5] Additionally, the fact that no institutional investors, who have the largest economic stake in the litigation, objected or requested exclusion further underscores the reasonableness of the Settlement. *See In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *6 (S.D.N.Y. July 21, 2020) ("It is significant that no institutional investors—which held over 93% of the shares of Signet common stock outstanding during the Class Period—have objected to the Settlement. … Accordingly, the absence of objections by these sophisticated class members is further evidence of the fairness of the Settlement.").[6]

The favorable reaction of the Settlement Class also supports approval of the Plan of Allocation. *See In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115809, at *14 (S.D.N.Y.

---

[5] *See also In re Merrill Lynch & Co. Research Reports Sec. Litig.*, 2007 WL 313474, at *10 (S.D.N.Y. Feb. 1, 2007) ("[T]he minimal number of objections and requests for exclusion militates in favor of approving the settlement as be[ing] fair, adequate, and reasonable.").

[6] *See also In re Citigroup Inc. Bond Litig.*, 296 F.R.D. 147, 156 (S.D.N.Y. 2013) (finding "class's reaction weighs heavily in favor of approval" where "not one of the objections or requests for exclusion was submitted by an institutional investor."); *In re AOL Time Warner, Inc. Sec. & ERISA Litig.*, 2006 WL 903236, at *10 (S.D.N.Y. Apr. 6, 2006) (lack of objections from institutional investors supported approval of settlement).

4

Nov. 7, 2007) ("[N]ot one class member has objected to the Plan of Allocation which was fully explained in the Notice of Settlement sent to all Class Members. This favorable reaction of the Class supports approval of the Plan of Allocation."); *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *14 (approving plan of allocation and noting that "no objections to the proposed Plan of Allocation have been received.").

Finally, the absence of any objections to the Fee and Expense Motion, including Lead Plaintiff's request for reimbursement in the amount of $7,500 pursuant to the PSLRA (15 U.S.C. § 78u–4(a)(4)), supports a finding that the fee and expense request is fair and reasonable. *See, e.g.*, *In re Veeco Instruments Inc. Sec. Litig.*, 2007 WL 4115808, at *10 (S.D.N.Y. Nov. 7, 2007) (the reaction of class members to a fee and expense request "is entitled to great weight by the Court" and the absence of any objection "suggests that the fee request is fair and reasonable."); *Maley v. Del Global Techs. Corp.*, 186 F. Supp. 2d 358, 374 (S.D.N.Y. 2002) ("Not one person, company, or institution has filed an objection to the fee request or the expense reimbursement sought. As was true with the underlying settlement, this overwhelmingly positive response by the Class attests to the approval of the Class with respect to the Settlement and the fee and expense application."); *see also Fogarazzo v. Lehman Bros.*, Inc., 2011 WL 671745, at *2 (S.D.N.Y. Feb. 23, 2011) (granting PSLRA awards to four Lead Plaintiffs in the aggregate amount of $32,000 where "[n]o objections to these awards was received from any members of the Class."). "As with approval of the Settlement, the lack of objections by institutional investors is notable, and lends further support to approval of the fee request." *In re Signet Jewelers Ltd. Sec. Litig.*, 2020 WL 4196468, at *21 (S.D.N.Y. July 21, 2020).[7]

---

[7] *See also In re Rite Aid Corp. Sec. Litig.*, 396 F.3d 294, 305 (3d Cir. 2005) ("a significant number of investors in the class were 'sophisticated' institutional investors that had considerable financial incentive to object had they believed the requested fees were excessive" and did not do

5

In sum, the favorable reaction of the Settlement Class is strong evidence that the Settlement is fair, reasonable and adequate, that the proposed Plan of Allocation of the Settlement proceeds is fair and equitable, and that Lead Counsel's fee and expense request is reasonable and should be granted.

## III.     THE OBJECTION SHOULD BE OVERRULED

The Objection is utterly without merit.  Mr. Hamilton's primary assertions are that Defendants improperly denied any wrongdoing (Objection at p. 1), the settlement amount is inadequate ("any monetary award to shareholders should be at least ten times the proposed amount given the severity of the lying and cover-up" (*id*. at p. 6)), and "[a]ny proposed settlement should include bringing wrongdoers to justice and the exercise of ethics clauses in all employment agreements." *Id*.  These assertions are based on a misunderstanding of the nature of the Action, the risks of continued litigation, and the import of a Wells Notice and Consent Order. Indeed, courts in the Southern District of New York have previously rejected substantially similar objections, and their decisions have been upheld on appeal.  The result should be the same here.

### A.     The Settlement Amount Is Fair And Reasonable Under The Circumstances And It Is Not Against Public Policy For Defendants To Deny Wrongdoing

With respect to the settlement amount objection, this Court has repeatedly found that the amount of the recovery is not in and of itself the determinant of final approval; rather, the question is whether the settlement amount is fair, reasonable and adequate ***under the circumstances***.  For example, in *Hicks v. Stanley*, the Court overruled class member objections claiming that the settlement amount was too low, stating:

---

so); *In re GSE Bonds Antitrust Litig.*, 2020 WL 3250593, at *4 (S.D.N.Y. June 16, 2020) ("[A] lack of objections from the class members, particularly from sophisticated institutional investors, to the proposed fees indicates that the quality of representation was high.").

6

> There are obstacles that the plaintiffs would face in continued litigation with defendants, and it is uncertain whether they could overcome these obstacles to prove both liability and damages. The settlement amount represents a fair payment to plaintiff class due to the risk that protracted litigation may be fruitless.

2005 WL 2757792, at *6 (S.D.N.Y. Oct. 24, 2005).

A similar result was reached in the *In re Austrian and German Bank Holocaust Litig.*, wherein the Court stated:

> [T]he $40 million sum cannot be evaluated in a vacuum. Plaintiffs face a substantial risk of recovering nothing should the case be litigated through trial. At the very least, the further litigation would drag on for years at a substantial cost to all parties. Therefore, while $40 million may not represent the total of plaintiffs' and the Settlement Class members' damages, that is the nature of settlement; in exchange for accepting less than full compensation, plaintiffs and the Settlement Class are at least assured partial recovery immediately.

80 F. Supp. 2d 164, 179 (S.D.N.Y. 2000) ("*Austrian Bank*").[8] The Court in *Austrian Bank* also rejected what it labeled the "No Admission of Wrongdoing" objection, finding:

> The Court understands why some might object to this refusal on the Austrian Banks' part. However, it is not an uncommon feature of civil settlements and it is not barred by law or public policy. Thus, while the Court is sensitive to this objection, the Court finds that it is not enough to warrant a finding that the Settlement is unfair, unreasonable or inadequate.

*Id*. at 180. Notably, each of Judge Kram's holdings in *Austrian Bank* were affirmed by the Second Circuit, which held that "[t]he District Court properly and thoroughly considered the factors required to assess a class action settlement." *D'Amato*, 236 F.3d at 85.

---

[8] *See also  Sykes v. Harris*, 2016 WL 3030156, at *19 (S.D.N.Y. May 24, 2016) ("Courts routinely overrule objections from class members that the anticipated relief they will receive under the settlement is too low. That the settlement does not provide for a full recovery of legal damages is the hallmark of compromise."); *Taft v. Ackermans*, 2007 WL 414493, at *7 (S.D.N.Y. Jan. 31, 2007) (overruling objections that the settlement amount was insufficient because, among other things, Lead Plaintiffs faced serious challenges in establishing liability and damages); *In re PaineWebber Ltd. P'Ships, Litig.*, 171 F.R.D. 104, 131 (S.D.N.Y. 1997) (noting that "the fact that the settlement fund may equal only a fraction of the potential recovery at trial does not render the settlement inadequate" particularly in light of "the very considerable risks a class would face at trial.").

As recognized in the *Hicks*, *Austrian Bank* and *D'Amato* decisions, as well as in the recent amendment to Fed. R. Civ. P. 23(e), the focus of the Court's inquiry at this stage of the litigation is on the procedural and substantive fairness of the settlement before it. *See D'Amato*, 236 F.3d at 85-87; *Hicks*, 2005 WL 2757792, at *6; *Austrian Bank*, 80 F. Supp. 2d at 173.[9] The Court need not "decide the merits of the case or resolve unsettled legal questions," *Carson v. American Brands, Inc.*, 450 U.S. 79, 88 n. 14 (1981); rather, it must "weigh the likelihood of success by the plaintiff class against the relief offered by the settlement." *Austrian Bank*, 80 F. Supp. 2d at 177.

Plaintiffs respectfully submit that their memorandum in support of the Final Approval Motion demonstrates why the Settlement is fair, reasonable and adequate, and that the purported "evidence" of wrongdoing set forth in the Objection does not change the calculus. For example, at the time the case was settled, the motion to dismiss was fully briefed and pending. While Plaintiffs were confident they would prevail, success on such a motion is never guaranteed. *See Goldstein v. MCI Worldcom*, 340 F.3d 238 (5th Cir. 2003) (affirming dismissal with prejudice of securities fraud class action complaint against Bernard Ebbers and Worldcom involving a massive securities fraud with a $685 million write-off of accounts receivable, for which Ebbers was later convicted). The heightened pleading standard and automatic stay of discovery mandated by the PSLRA make the successful pleading of a securities class action exceptionally hard, as demonstrated by the fact that "[r]ecent annual dismissal rate[s] have been close[] to 50%." *Securities Class Action Filings: 2020 Year in Review* (Cornerstone Research 2021 at p.

---

[9] *See also* Advisory Committee Notes to 2018 Amendments to FED. R. CIV. P. 23(e), 324 F.R.D. 904, at 918 ("The central concern in reviewing a proposed class-action settlement is that it be fair, reasonable, and adequate. … The goal of this amendment is not to displace any factor [courts traditionally utilize in making this determination], but rather to focus the court and the lawyers on the core concerns of procedure and substance that should guide the decision whether to approve the proposal.").

18 (Fig. 17)) (ECF No. 86-7); *see also Eminence Capital, LLC v. Aspeon, Inc.*, 316 F.3d 1048, 1052 (9th Cir. 2003) ("The PSLRA requires a plaintiff to plead a complaint of securities fraud with an unprecedented degree of specificity and detail giving rise to a strong inference of deliberate recklessness.  This is not an easy standard to comply with—it was not intended to be—and plaintiffs must be held to it.").  Accordingly, dismissal was certainly possible.

     Moreover, success at the pleading stage would not necessarily have garnered a higher settlement, or any settlement at all.  *See Gross v. GFI Group, Inc.*, 784 Fed. Appx. 27, 29 (2d Cir. Sept. 13, 2019) (affirming grant of summary judgment on the alternative ground that Defendant's "statement did not, as a matter of law, amount to a material misrepresentation or omission actionable under section 10(b)," despite the trial court twice finding the statement actionable); *Robbins v. Koger Props., Inc.*, 116 F.3d 1441 (11th Cir. 1997) (reversing jury verdict of $81 million for plaintiffs).  Had Plaintiffs prevailed at the motion to dismiss stage, they still would have had to obtain class certification, and prove their case, including loss causation and damages.  Defendants, however, would have continued to assert that Plaintiffs could not establish loss causation for any of the purported disclosures dates, and even if they could, the damages were minimal.  Although Plaintiffs believed that they had meritorious arguments in response to Defendants' assertions, it simply cannot be disputed that the Parties held extremely disparate views on loss causation and damages, and had Defendants' arguments been accepted in whole or part, they would have dramatically limited or foreclosed any potential recovery.  *See In re Cendant Corp. Litig*, 264 F.3d 201, 239 (3d Cir. 2001) ("[E]stablishing damages at trial would lead to a 'battle of experts' with each side presenting its figures to the jury and with no guarantee whom the jury would believe."); *In re Bear Stearns Cos. Sec., Deriv., & ERISA Litig.*, 909 F. Supp. 2d 259, 267 (S.D.N.Y. 2012) ("When the success of a party's case turns on winning a so-

called 'battle of experts,' victory is by no means assured.").

Plaintiffs' damages expert estimates that, assuming a complete victory for Plaintiffs, the total *maximum* damages potentially available in this Action would be approximately $304 million. Under this scenario, the Settlement equates to approximately 2.5% of maximum potential damages. Defendants had, however, raised significant arguments concerning Plaintiffs' alleged partial corrective disclosures on December 1, 2017 and July 17, 2019 and would likely have raised additional arguments concerning the length of the class period if Plaintiffs prevailed on the motion to dismiss. If any of Defendants' arguments were accepted by the Court or a jury, the Settlement Class's potential maximum damages could have been reduced to anywhere from $26 million to $75 million (and even further if disaggregation principles were applied). *See* Solish Decl., ¶¶55-56. Thus, the $7.5 million Settlement represents a recovery of 2.5% to 28.8% (assuming $26 million in damages). This range falls well above the median recovery of 1.7% of estimated damages in securities class actions in 2020 and, as such, strongly supports approval of the Settlement. *See* Recent Trends in Securities Class Action Litigation: 2020 Full-Year Review (NERA Report, at p. 20 (Fig. 16)) (ECF No. 86-6); *see also Thomas v. Albright*, 139 F.3d 227, 234 (D.C. Cir. 1998) ("The court should not reject a settlement merely because individual class members complain that they would have received more had they prevailed after a trial.").[10]

---

[10] Mr. Hamilton's assertion that damages can be determined by simply comparing the performance of Eagle common stock to the approximately 75% rise of the S&P 500 index since December 1, 2017 misses the mark. *See* Objection at 6. Among other things, it attributes the full difference in performance to the alleged wrongdoing, ignores various disaggregation issues, and incorrectly assumes that the S&P 500 is an appropriate benchmark against which to measure Eagle's stock price performance. Simply put, proving loss causation and damages is a far more complicated and risky endeavor. *See Taft*, 2007 WL 414493, at *7 ("The Goshay Objectors argue that the settlement amount constitutes only a small fraction of the total decline in market capitalization of KPNQwest and is thus insufficient. This view ignores the need to demonstrate that the fraud was the proximate cause of the loss."); *In re Scientific Atl., Inc. Sec. Litig.*, 754 F. Supp. 2d 1339, 1379-80 (N.D. Ga. 2010) (granting motion for summary judgment because

### B. The Existence Of Government Investigations Does Not Negatively Impact The Settlement Or Guarantee Victory In This Action

Mr. Hamilton's reliance on the Wells Notice and Consent Order between Defendant Bensignor and the Federal Reserve Board of Governors is equally unavailing. First, the Settlement was negotiated before the Wells Notice was issued or the Consent Order was entered. While Plaintiffs were aware of various governmental investigations, very little information related thereto was or is publicly available. Thus, the Parties properly negotiated the Settlement based on the facts that were available at the time. To hold otherwise would prevent civil litigants from ever settling a case while a governmental investigation was ongoing. Given that such investigations can take years to resolve, and even then may not result in charges or criminal or civil liability, such a holding would be against public policy. *See Weinberger v. Kendrick*, 698 F.2d 61, 73 (2d Cir. 1982) ("There are weighty justifications, such as the reduction of litigation and related expenses, for the general policy favoring the settlement of litigation."); *In re WorldCom, Inc. Sec. Litig.*, 2004 WL 2591402, at *10 (S.D.N.Y. Nov. 12, 2004) ("public policy favors settlement, especially in the case of class actions.").

Second, neither the Wells Notice to Mr. Levingston, or the Consent Order with respect to Mr. Bensignor, constitutes a smoking gun, a roadmap to proving liability, or a guarantee of victory in this Action. Eagle has not received a Wells notice and is not a party to the Consent Order. With respect to the Wells Notice, the SEC may or may not pursue charges, and even if it does, the result may be a finding of no wrongdoing or a finding of liability on issues unrelated to this Action. For instance, accordingly to a disclosure in Eagle's July 21, 2021 earnings release, Eagle believes that one of the issue being pursued by the SEC is the relationship of the company and certain of its former officers and directors with a local public official. Suppl. Solish Decl.,

---

plaintiffs did not disentangle fraud-related and non-fraud-related portions of stock decline).

11

Ex. 3 at 11.  Assuming this is correct and results in liability, such an outcome would be unrelated to the issues in this case.  Furthermore, even if there was a finding of liability with respect to the alleged related party transactions at issue in this matter, "[t]he determination in the government action does not estop defendants from relitigating the question."  *City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 456 (2d Cir. 1974), *abrogated on other grounds by Goldberger v. Integrated Res., Inc.*, 209 F.3d 43 (2d Cir. 2000).

With regard to the Consent Order, the only finding is that "Bensignor, while serving as a senior executive at the Bank, engaged in unsafe and unsound banking practices by failing to ensure that he disclosed, in accordance with the Bank's Code of Conduct and policies relevant to insider lending, certain information regarding the participation of various parties in certain transactions of the Bank."  While such a finding does indicate that Plaintiffs were on the right track, it is also incredibly vague and provides none of the detail that would be necessary to successfully pleading a securities case under the PSLRA.  Among other things, the Consent Order does not indicate that Mr. Bensignor intentionally or recklessly engaged in unsafe and unsound banking practices.  Contrary to Mr. Hamilton's assertion, the Consent Order's lack of specificity and findings highlights the dangers of Plaintiffs waiting for government investigations to resolve before settling a risky case.

Finally, the Objection fails to grasp the distinction between civil liability and criminal or regulatory liability.  As this Court has recognized, "regulatory enforcement authority may sweep more broadly than a private civil right of action."  *In re LIBOR-Based Financial Instruments Antitrust Litig.*, 327 F.R.D. 483, 498 (S.D.N.Y. 2018) ("*LIBOR*").  For example, under the Securities Exchange Act of 1934, "while a plaintiff must prove reliance ... in a private securities fraud suit, there is no such requirement in an SEC enforcement action."  *SEC v. Apuzzo*, 689 F.3d

12

204, 213 (2d Cir. 2012). Consequently, contrary to Mr. Hamilton's claims, even if the SEC were to pursue and prevail on charges relevant to this Action, Plaintiffs would still have to overcome significant obstacles—including, *inter alia*, proving reliance, loss causation and damages. *See City of Detroit v. Grinnell Corp.*, 495 F.2d 448, 457 (2d Cir. 1974) ("The objectors dispute each of these points vigorously, but the fact remains that [plaintiffs'] case is not *prima facie* proven by the government's enforcement action and that several substantial roadblocks stand in the way of any ultimate victory for plaintiffs on the merits."); *In re Domestic Air Transp. Antitrust Litig.*, 148 F.R.D. 297, 333 (N.D. Ga. 1993) ("The Court finds that the mere filing of a civil complaint by the Justice Department presents no greater proof of success on the merits of plaintiffs' claims.").

### C. Plaintiffs Are Private Litigants, Not Prosecutors Or Regulators

Contrary to Mr. Hamilton's wishes, it is not the job of Plaintiffs to "bring[] wrongdoers to justice." Objection at 6. As the Supreme Court has explained, "[c]ompensatory damages are intended to redress the concrete loss that the plaintiff has suffered by reason of the defendant's wrongful conduct," *State Farm Mut. Auto. Ins. Co. v. Campbell*, 538 U.S. 408, 416 (2003), while the criminal law advances "the interests of punishment and deterrence." *Exxon Shipping Co. v. Baker*, 554 U.S. 471, 504 (2008). Here, Plaintiffs have achieved an excellent recovery for the Settlement Class given the significant risks of continued litigation. Nothing more is required.

## IV. CONCLUSION

For the foregoing reasons, Plaintiffs and Lead Counsel respectfully request that the Court overrule the Objection, and grant the Final Approval Motion and the Fee and Expense Motion.

Dated: January 13, 2022                    **GLANCY PRONGAY & MURRAY LLP**

By: */s/ Leanne H. Solish*
Robert V. Prongay (*pro hac vice*)
Joseph D. Cohen (*pro hac vice*)
Jason L. Krajcer (*pro hac vice*)
Leanne H. Solish (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
           jcohen@glancylaw.com
           jkrajcer@glancylaw.com
           lsolish@glancylaw.com

*Counsel for Lead Plaintiff and Lead Counsel for the Proposed Settlement Class*

**LABATON SUCHAROW LLP**
Francis P. McConville
140 Broadway, 34th Floor
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: fmcconville@labaton.com

*Counsel for Norfolk County Retirement System*

## **CERTIFICATE OF SERVICE**

I hereby certify that the foregoing document was electronically filed with the Clerk of Court via the CM/ECF system, which will send Notice of such filing to all counsel of record.

Dated: January 13, 2022        */s/ Leanne H. Solish*
                              Leanne H. Solish