## UNITED STATES DISTRICT COURT
## SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------X

SHIVA STEIN, Individually and On Behalf
of All Others Similarly Situated,

           Plaintiff,

    -against-

EAGLE BANCORP, INC., SUSAN G. RIEL,
RONALD D. PAUL, CHARLES D.
LEVINGSTON, JAMES H. LANGMEAD,
and LAURENCE E. BENSIGNOR,

          Defendants.

-------------------------------------------------------X

Case No.: 1:19-CV-06873-LGS

### EAGLE DEFENDANTS' REPLY TO OBJECTION TO SETTLEMENT

BAKER & HOSTETLER LLP
45 Rockefeller Plaza
New York, New York 10111
Tel. 212-589-4200
Fax. 212-589-4201

*Attorneys for Defendants*

Defendants Eagle Bancorp, Inc. ("Eagle"), Susan G. Riel, Ronald D. Paul, Charles D. Levingston, James H. Langmead, and Laurence E. Bensignor, submit this reply memorandum in further support of Lead Plaintiff's motion for final approval of the settlement and in response to the objection of Timothy D. Hamilton, a disgruntled former employee of Eagle ("Objection").

## I.      Tim Hamilton's History of Employment and Personal Grievances

Eagle terminated Mr. Hamilton for performance reasons in May 2020.  In response, Mr. Hamilton filed a whistleblower claim with the Occupational Safety and Health Administration ("OSHA") in October 2020.[1]  Eagle has responded, and the matter is pending before the agency. Declaration of Paul Saltzman ("Saltzman Decl.") ¶ 5.

Mr. Hamilton's employment claim has since spilled over into a series of settlement objections and corporate-governance maneuvers.  Whether for leverage in his employment dispute or due to a misunderstanding of the law, Mr. Hamilton continues to repackage the same underlying conclusory statements and complain to courts and to Eagle and its Board of Directors about matters that are the subject of his OSHA claim.  None of these stratagems has succeeded so far, and his Objection should not succeed either.

Most relevant among these was Mr. Hamilton's recent objection to Eagle's settlement of a demand on its Board of Directors by another shareholder, Yale Wiesberg ("Wiesberg Demand").  *See generally* Saltzman Decl. ¶¶ 7-8; Declaration of Douglas Greene ("Greene Decl.") Ex. A.  Mr. Wiesberg asserted, among other things, that the main matters alleged in this securities class action – Eagle's making and disclosure of related-party loans – were the product of breach of fiduciary duty by Eagle's officers and directors.  In response to the Wiesberg Demand, Eagle's Board of Directors formed a Demand Committee comprised of two

---

[1] Mr. Hamilton put the fact of his OSHA claim in the public domain as an objector in related litigation, discussed below.

independent directors who were not present at the time of the underlying events.  The Demand

Committee engaged independent outside counsel to assist it in its independent investigation of

the Wiesberg Demand.  The counsel team was led by the former Director of Enforcement of the

Securities & Exchange Commission (the "SEC").  The Demand Committee conducted an

investigation, which in turn considered multiple other investigations Eagle has undertaken into

the matters alleged in this securities class action and the Wiesberg Demand.

Informed by these investigations and the recommendations of the Demand Committee,

Eagle reached a settlement with Mr. Wiesberg ("Demand Settlement").  As part of the Demand

Settlement, Eagle agreed to a set of corporate governance reforms to address the issues raised in

the Wiesberg Demand (and also relevant to this related securities class action):

(1) A commitment to spend at least $2 million over the next three years on enhanced
control functions;

(2) A requirement for quarterly reports from the Chief Risk Officer to the Risk
Committee of the Board regarding all remaining loans to Eagle's former Chief
Executive Officer, Mr. Paul;

(3) Revisions to the Related Party Transactions policy and the Whistleblower Program;
and

(4) Increased Board and management governance over disclosure controls and
compliance.

The Wiesberg Settlement included a number of releases, but preserved Eagle's right to assert

certain claims against Mr. Paul.  *See* Greene Decl. Ex. C.[2]

---

[2] As set forth in the Wiesberg Stipulation of Settlement, the Demand Committee and the Board
determined to preserve certain categories of potential claims against Mr. Paul, summarized as
follows: (i) claims for contribution in connection with the securities class action; (ii) claims as to

Despite the informed nature of the Wiesberg Settlement, and its benefits to Eagle and its shareholders, Mr. Hamilton objected, raising largely the same issues as here.  At the conclusion of a lengthy hearing at which the court provided Mr. Hamilton with a full opportunity to be heard, the court overruled his objection and approved the settlement under the settlement standards applicable to shareholder derivative actions.  Saltzman Decl. ¶ 7; Greene Decl. Ex. B.

Mr. Hamilton's objection to the Wiesberg Settlement followed his own demand on Eagle's Board, that, among other things, shareholders be allowed to conduct further investigations and that Eagle terminate certain employees and initiate further litigation.  On November 18, 2021, the Board, at the recommendation of the independent Demand Committee, rejected Mr. Hamilton's demand.  Greene Decl. Exs. D & E.

Finally, Mr. Hamilton has made shareholder proposals for Eagle's 2021 and 2022 proxy statements, seeking to ask Eagle shareholders to vote to force Eagle to initiate shareholder led investigations, terminate employees, and initiate litigation – once again, all based upon the same set of underlying conclusory allegations.  He abruptly withdrew his 2021 proxy proposal on the eve of Eagle's 2021 Annual Meeting, and his 2022 proxy proposal is pending; Eagle expects to receive a no-action letter from the SEC denying the proposal.  Saltzman Decl. ¶ 9; Greene Decl. Exs. F & G.  Not a single additional shareholder has supported Mr. Hamilton or joined his personal crusade against Eagle, including in respect of his Objection here.

## II.        The Objection Does Not Impact the Merits of this Settlement

Nothing in the Objection suggests that this settlement—negotiated at arm's length by sophisticated parties with the assistance of an experienced mediator[3]—should not be approved.

---

Mr. Paul's compensation; (iii) claims as to the payment of Mr. Paul's attorneys' fees; and (iv) claims arising out of government actions.  Greene Decl. Ex. C, at n.3.

[3] *See* Declaration of Mediator Jed Melnick, Esq.

Before the mediation that facilitated the settlement here, Eagle discussed Mr. Hamilton's OSHA claim with Plaintiffs' counsel.  And the Objection contains nothing new in substance; it simply repackages the same subjects alleged in this litigation and the Wiesberg Demand, which sophisticated shareholders' counsel have evaluated under the applicable legal standards in their decisions to settle.

Indeed, the Objection contains far less detail than the Amended Complaint in this action. The gravamen of both the Amended Complaint and Mr. Hamilton's Objection is that Eagle's related-party loans and disclosures were improper.  But neither the Amended Complaint nor Mr. Hamilton has detailed any wrongdoing in support of their scienter allegations, or even suggested a concrete personal motive by any current or former Eagle officer for fraudulently making or omitting to disclose certain related-party loans.  In support of scienter, the Amended Complaint alleges only *de minimis* stock sales by Mr. Paul, and does not and cannot address the good faith demonstrated by current Chief Financial Officer Charles Levingston, who purchased stock on the open market when Plaintiffs claim Eagle's stock price was artificially inflated.  Simply put, neither the Amended Complaint nor Mr. Hamilton allege anything close to the required strong inference of scienter.  *See generally* Defendants' Memorandum in Support of Motion to Dismiss, Dkt. 46.

The only new subjects in Mr. Hamilton's most recent objection are the SEC staff's issuance of a Wells notice to Mr. Levingston and Mr. Bensignor's settlement with the Federal Reserve.  But the investigations in which these developments occurred were well-known – indeed, Eagle's disclosure of the investigations was what triggered the securities class action. Amended Complaint ¶¶ 16-18.  The normal ebb and flow of disclosed investigations, including Wells notices, do not contribute to the required strong inference of scienter.   Nor does a federal

reserve settlement demonstrate scienter, particularly where it states on its face that it was entered into "before the filing of any notices, or the taking of any testimony or adjudication of or finding on any issue of fact or law herein, and without Bensignor's admitting or denying any allegation made or implied by the Board of Governors in connection herewith . . . ." Order of Prohibition Issued Upon Consent at 2, *In re Laurence E. Bensignor* (2021) (Docket Nos. 21-025-B-I; 21-025-E-I).

The settlement of this securities class action, moreover, reflects important considerations beyond the strength of Plaintiffs' or Mr. Hamilton's allegations of wrongdoing. As detailed in Plaintiffs' settlement papers, Eagle has strong loss causation and damages defenses, in addition to strong arguments against falsity and scienter. Even assuming liability, which Defendants strongly contest, Eagle estimated possible damages in the range of $26 million to $75 million. *See* Plaintiffs' Memorandum in Support of Motion for Final Settlement Approval, Dkt. 83, at 15-16 (explaining Defendants' damages position). The combination of these relatively modest damages estimates with Defendants' belief in their ability to defeat Plaintiffs' claims of falsity and scienter, informed Eagle's risk analysis concerning the costs and benefits of further litigation and opened the door to a possible settlement in the interests of closure. Eagle was also motivated (as were Plaintiffs) to settle before it exhausted the D&O insurance proceeds available to the Company and for reimbursement of its indemnification of individuals' fees – a milestone that is rapidly approaching. Saltzman Decl. ¶ 11. While $7.5 million is at the top of the range Eagle considered reasonable to pay, it allowed Eagle to manage its risk and legal expenses for the benefit of its shareholders. *Id.* ¶¶ 10-11.

### III.   Conclusion

For the foregoing reasons, and the reasons set forth in Plaintiffs' papers, the Court should approve the settlement.

Dated: January 13, 2022                         Respectfully submitted,

                                            BAKER & HOSTETLER LLP

                                            By:   *s/ Douglas W. Greene*
                                                   Douglas W. Greene (*pro hac vice*)
                                                   dgreene@bakerlaw.com
                                                   45 Rockefeller Plaza
                                                   New York, NY 10111
                                                   Telephone: 212.589.4200

                                                   Genevieve York-Erwin
                                                   gyorkerwin@bakerlaw.com
                                                   999 Third Avenue, Suite 3600
                                                   Seattle, WA  98104
                                                   Telephone: 206.566.7079

                                                   *Attorneys for Defendants*