# EXHIBIT A

**Objection to Derivative Stipulation and Agreement of Settlement.**

My responsibility as a shareholder of EagleBank ( EGBN ), a publicly traded United States company, compels me to object to the proposed Stipulation and Agreement of Settlement ( aka the suit between Yale Wiesberg, on behalf of Eagle Bancorp, Inc. , and the named defendants ) for the benefit of all shareholders. I am moved to do so primarily by the Defendants Denial of Liability, which is outlined in the proposed settlement. Specifically, the part where the" defendants have denied, and continue to deny, among other things, that they breached their fiduciary duties or any other duty owed to Eagle Bancorp or Eagle Bancorp's stockholders, that they committed or engaged in any violation of law or wrongdoing whatsoever, or that the Stockholder, Eagle Bancorp, or Eagle Bancorp's stockholders suffered any damage or were harmed as a result of any act, omission, or conduct by the Individual Defendants alleged in the Demand, the Derivative Action, or OTHERWISE. The individual Defendants have further asserted, and continue to assert, that at all relevant times, they acted in good faith and in a manner that they reasonably believed to be in the best interest of Eagle Bancorp and Eagle Bancorps stockholders. The Stipulation and Agreement of Settlement further asserts that Eagle Bancorp similarly disclaims all wrongdoing by the Company in connection with the Derivative Action". I know these statements to be false, and submit the following evidence.

By way of Background, my name is Timothy D. Hamilton, I was employed by EagleBank from November 2004 through May 2020. During my employment I witnessed multiple instances of both unethical and illegal activity including multiple Regulation O violations, Self-dealing, violations of Sarbanes Oxley and NASDAQ listing requirements, financial fraud, and multiple violations of the Bank's own ethics policy. I was the account officer for Potomac Investment Trust, a trust created for the benefit of Ron Paul's children for approximately ten years. As of today, no investigative agency has ever reached out to me to question me about my first-hand knowledge of these unethical and illegal activities. I was interview by the Bank's criminal defense attorney's twice, first in late December 2017, and then again in April 2020. In both instances, the Bank's attorneys questioned me extensively about the illegal and unethical activity. I am sure the defendants will counter that my objection to this settlement is sour grapes as they fired me on May 6, 2020. I have filed a whistleblower complaint with OSHA ( Exhibit A ), and am awaiting the conclusion of their investigation. Sour grapes or not, I am a shareholder of a public corporation where I know that the truth about unethical and illegal activities has not been disclosed to the great detriment of my fellow shareholders.

On December 1, 2017 the Aurelius report was published that alleged multiple instances of wrongdoing. On December 20th, 2017, I was forced to interview with the bank's white collar criminal defense attorneys, Gibson Dunn. During this interview I was questioned extensively regarding my knowledge of unethical and illegal activity, particularly as it related to Potomac Investment Trust. During the interview, one of the Bank's attorneys , Courtney Brown, asked me if I thought " Ron Paul did it". Although the interview was done via telephone, I could tell the litany of the Bank's attorneys did not like my answer. Seven days later, the Potomac Investment Trust accounts were abruptly transferred out of my portfolio by Susan Riel ( see attached copy of her email-Exhibit B ). Susan Riel was the COO ( Ron Paul was the

1

CEO of the Bank at the time), ( Susan Riel is now the CEO, and also a member of the Board of Directors ). To have someone at this level of the company requesting a transfer of accounts in an account officer's portfolio is something that I had never seen before. I have often wondered why no investigators have ever contacted me about my knowledge of the illegal and unethical activity, and have to further wonder if the abrupt timing of the transfer of the Potomac Investment Trust accounts factors into this? I had been the account officer for over ten years, and suddenly with the publication of Aurelius, and my interview with the Bank's attorneys, the accounts are transferred? I can't imagine that any competent investigator would not want to speak with the ten plus year account officer. To my knowledge this transfer is not known by Federal Bank investigators or law enforcement, and should be before any settlement should be considered. Additionally, I learned in May of 2020 that the SEC was unaware of these transfers by Susan Riel. They were surprised to learn that they did not have this information. Keep in mind that they had been investigating the Bank for some time at that point. The Bank's ethics policy requires complete cooperation with any investigators, yet no one at the Bank had disclosed this, or that I had been the account officer for Potomac Investment Trust, ( an entity they were investigating ) for over ten years. The Bank's attorneys had questioned me twice extensively about Potomac Investment Trust, yet no one at the Bank mentioned this to the SEC. These actions were certainly not in the best interest of shareholders.

In March of 2019 Ron Paul abruptly retired. I had just completed mandatory ethics training, where ironically the training includes a short video of Ron Paul instructing those in the training to always do the right thing ,report violations, etc. The ethics training ( Exhibit C-Banks ethics policy ) instructed those with concerns to go to your superiors, so I reached out to my superior , John Richardson, EVP, to express my concerns regarding Potomac Investment Trust and the unethical and illegal activity. I felt it somewhat safe ( now that Ron Paul had left the Bank ). My concerns were met with Mr. Richardson stating that he did not want to know about it. This confirmed to me that even knowing about or discussing this topic is not good for your job security at Eagle Bank. Mr. Richardson's failure to bring my concerns regarding Potomac Investment Trust to his superiors was certainly not in the best interest of shareholders.

In March of 2020, a colleague at EagleBank, Siobhan Poole, mentioned to me that the Bank had hired legal counsel for her as the Feds wanted to question her regarding Ron Paul and his EagleBank activities. I subsequently asked her for the contact information ( Exhibit D ) of the Federal Investigator as I wanted to have this information if I decided to independently reach out ( although I was fearful after my conversation with Mr. Richardson ). Shortly thereafter, I received an email from the Bank's internal counsel ( Exhibit D ), Paul Saltzman, expressing interest as he said that he had heard from Ms. Poole that I wanted to speak with the Bank's attorneys about what I know. I responded to Mr. Saltzman ( via email, see attached copies, also Exhibit D ) telling him that I had in fact not requested to speak with the bank's attorneys. His subsequent emails began to wratchet up the pressure and he insisted that I agree to another interview as he said it was required as part of my employment . I know that Mr. Saltzman's statement was a lie as I did not request to speak with the Bank's attorneys and I began to look for personal legal counsel. I am not sure how lying to me is in the best interest of shareholders? I was a fifteen year EagleBank employee seeking legal counsel to protect my rights from my employer all

2

because of illegal and unethical activity perpetuated by current and existing members of senior management, and because I knew they were lying to me regarding my request to speak with their lawyers. I had no choice and agreed to the interview on April 1, 2020. I was fired on May 6, 2020, 36 days after the interview. During this interview I was again questioned extensively regarding illegal and unethical activity perpetrated by members of Senior Management of the Bank.  The Bank's attorneys were well aware of dozens of instances of illegal and unethical activity.

During both of my interviews with the Bank's white collar criminal defense attorneys, we discussed multiple instances of criminal and unethical activity. As a publicly traded corporation, the Bank is required to file ethics waivers ( SEC 406(b), SEC 406(c), item 5.05-Form 8-K ) as part of Sarbanes Oxley, for every single violation of their ethics policy. Again, I was twice questioned extensively by two separate law firms hired by the Bank, where we discussed unethical and illegal activities, which included dozens and dozens of violations of the Bank's own ethics policy. I can find no evidence that they have ever filed even one violation waiver request, which is in defiance of Sarbanes Oxley. Not adhering to the provisions of Sarbanes Oxley is certainly contrary to the defendants statements in the Stipulation and Agreement of Settlement, ( and certainly a complete failure at meeting their fiduciary duty ) and yet another reason that this settlement should not be allowed. As a NASDAQ listed public company, they are also required to file these ethics waivers. Again, I can find no evidence of even one waiver. This is another example of the defendants failure to meet their fiduciary responsibility.

**Examples of illegal and unethical activities that were discussed with the Bank's White Collar Criminal Defense Attorneys.**

Potomac Investment Trust: In late 2015, Potomac Investment Trust's line of credit came up for it's renewal ( Exhibit E ). Collateral for the line consisted, among other things, Marketable Securities. As the normal process advanced, the loan was presented to Management Loan Committee for approval, listing the marketable securities as collateral. Based upon the size of the loan, it was required to pass both Management Loan Committee and Director's Loan Committee. Subsequently, loan was approved at Management Loan Committee. After this approval, but before Directors Loan Committee was held, my assistant, Andria Malloy, discovered that the marketable securities had been released by Janice Williams without proper approval.  Ms. Williams had released over nine million dollars in collateral on a fifteen million dollar line of credit, which was the only tangible collateral on this line on this line of credit. Ms. Williams had no authority to do this.   This release was contrary to bank policy and was done without any approval. I believe Ms. Williams sat at Management Loan Committee and approved the loan with the securities listed as collateral, all the while knowing they had been released as she was the one who released them ( see copy of her release letter to brokerage firm ). When questioned, Ms. Williams, my superior, told me that if it comes up at Directors Loan Committee, "she will handle it ". The Loan Request Memorandum ( see attached-included in exhibit E ) was then modified to exclude the marketable securities as collateral for the copy that  to Directors Loan Committee, which deceived the members of the Directors Loan Committee.  I believed this to be illegal and certainly unethical, and I refused to sign the approval memorandum. No ethics waiver for this event was ever filed. Keep in mind

3

that this borrower was a trust set up for the benefit of the Ron Paul's children. ( This loan was not classified as a Regulation O loan,  there was a history of involvement from individuals that were not affiliated with the Borrower, namely Mr. Ron Paul's employee, that would normally trigger Regulation O, however, this loan  would not be permitted as a regulation O Loan, and the bank would not have been allowed  to make this loan according to Federal Regulations, more about that later ). Why would Ms. Williams execute this fraudulent release for a borrower that is a trust set up for the benefit of her boss's children? The Bank would have never approved a line of this amount without this collateral. At the time, Directors Loan Committee members had no idea that this crime had been committed. I have never been questioned by Bank Regulators or law enforcement regarding this transaction, however I was questioned extensively about it by the Bank's attorneys in April of 2020. They knew all of the details.

In August 2016 I was directed by Janice Williams to "get approvals and loan documents" for Potomac Investment Trust for a loan for the purchase of real estate ( Exhibit F ). If this was the normal process, she would have had me call the trustee of the trust, or indicated that the trust would like to apply for a loan, not " get approvals and loan documents".  It turned out that Potomac Investment Trust was purchasing the real estate( 1833, 1835, and 1875 Brightseat Road, Landover, MD-Look it up on the Maryland SDAT website ) from an EagleBank entity, Bethesda Leasing, LLC, an entity that Ms. Williams informed me via email ( see Exhibit F ) was a subsidiary of the Bank that holds their OREO ( other real estate owned ). I believe the bank acquired the property through foreclosure from another borrower. as I questioned Ms. Williams, I found out that the properties were not ever listed for sale with a broker, which was highly unusual, as the Bank should have tried to obtain the highest price possible on the open market. I also found out from Ms. Williams that there was no sales contract, again highly unusual . Additionally, Ms. Williams had picked the title company and ordered what I would call a bogus self-serving appraisal, which attempts to justify the below market value sales price,  prior to approval.  In fact, we would have never made a loan to any other borrower with these abnormalities.  It was also unusual for Ms. Williams to have direct contact with borrowers, as here role was not client facing, but she seemed to always be the point person for loans and transactions involving Potomac Investment Trust, a trust set up for the benefit of Ms. Williams boss, the Bank CEO, Ron Paul's children.  This loan was approved by Janice Williams and Lindsey Rheaume, I refused to sign this approval in front of Mr. Rheaume and he *knew* why I wouldn't sign ( I knew it illegal and unethical ). Mr. Rheaume is an Executive Vice President and Chief C & I Lending Officer, Janice Williams is also an EVP. There is no way possible that they did not know this to be illegal and unethical. Anyone with common sense would know that this transaction was illegal, yet both Ms. Williams and Mr. Rheaume approved this transaction. These individuals should not be employed by a Federally Insured and Chartered Financial institution. Their approvals were certainly not in the best interest of shareholders, but likely in their own personal best interest.  I have never been questioned by Bank Regulators or law enforcement regarding this transaction. I believe two of the properties have since been sold at a profit ( these profits belong to shareholders and litigation on their behalf should be initiated ). I don't see how this is not stealing from shareholders. In May of 2020, I learned that the SEC was unaware that the Bank had sold property it owned to Potomac Investment Trust. The SEC investigation had been ongoing for some time at that point, yet they were not made aware of this transaction by anyone at the Bank that they had interviewed ( the Bank's attorneys had questioned me extensively about this twice, once in December

4

2017 and again in April 2020, days before they fired me ). Not fully cooperating with investigators is specifically outlined in the Bank's own ethics policy as being unethical, yet no one came clean on this transaction with the SEC. These actions are certainly not in the best interest of shareholders, and they have likely caused additional legal expenses by the Bank. This needs to be fully investigated and the results of the investigation disclosed to shareholders. How is not reporting illegal activity to the SEC, in defiance of your own ethics policy, in the best interest of shareholders? ( self-dealing is illegal, the bank selling real estate it owns, below market value, to a borrower that is a trust for the benefit of the Chairman's children is reprehensible ). The individual defendants are all either members of the Board of Directors or members of Sr. Management, their attorneys knew of this illegal self-dealing as early as December 2017, yet none of defendants thought it illegal. If they didn't know about, they have failed miserably at meeting their fiduciary responsibility to the shareholders. Additionally, if they did not know about it, the disconnect between Bank legal counsel, who knew all about it, and the Board of Directors, certainly points to additional instances of criminal activity. Weather they knew about it or not, this massive failure at meeting their fiduciary responsibility should certainly disqualify them from participating as Board members of a publicly traded company, particularly a Financial Institution.

It appears that Ron Paul was often pulling the strings for Potomac Investment Trust ( a loan relationship that the Bank classified as not a Regulation O loan ) as evidenced by exhibit G. These emails show how Ron Paul's employee, Yvonne Woodson, directed Janice Williams to conduct banking business on behalf of Potomac Investment Trust. The only relationship between Yvonne Woodson and Potomac Trust is that Ms. Woodson was employed by Ron Paul at his real estate firm, and the borrower, Potomac Investment Trust was a trust for the benefit of Ron Paul's children. The Trustees for Potomac Investment Trust was known to be Fred Sommer and Patrick Howley. ( at a later date, the trustee of Potomac Investment Trust was changed to Kathy McAllum, another employ of Ron Paul at his real estate company. The fact that the trustee on a no- Regulation O loan was a direct employee of Ron Paul, on a loan for a trust that benefitted his children was a huge red flag. Janice Williams is and EVP at the Bank and an attorney, she knows full well that Ms. Woodson's involvement was a huge red flag and thereby made this loan in violation of Regulation O, as was that of Kathy McAllum being made the trustee, and signaled that Mr. Paul was in fact pulling the strings for Potomac Investment Trust.   If Ron Paul had any involvement with the Potomac Investment Trust loans, they would automatically become a Regulation O loan. However, Regulation O, understandably, limits what purposes an insider can borrow for, and these mentioned loans would not have been allowed if they were properly classified as Regulation O. In fact, the Bank has claimed for quite some time that they misclassified certain loans. This is simply not true in this case. If the Potomac Investment  Trust Loans were misclassified, and should have been reported as Regulation O loans, the bank would have not been permitted to make those loans as the limits on loans to insiders is limited to dollar amount, $100,000 I believe, and also limited as the loan must have a lien on the insiders primary residence, or be for educational purposes.  None of the Potomac Investment Trust loans had such a lien, or were for educational purposes. Taking direction from Ms. Woodson for the Potomac Investment Trust relationship was not in the best interest of shareholders as it put the bank at tremendous undue risk as evidenced by what has occurred since the publication of Aurelius, including tens of millions of dollars in expenses for the bank's defense.

5

The defendants claim no wrongdoing, and that they always acted in good faith and in a manner that they reasonably believed to be in the best interests of Eagle Bancorp and Eagle Bancorp's Stockholders. The fact is that a few of the defendants were directly involved ( as I have outlined above ), but I believe it reasonable to assume that all defendants were privy to the details of their own law firm(s) internal investigations as members of the Board of Directors or Sr. Management.   Their law firms questioned me extensively about illegal and unethical activity, first in December 2017, and then again in April 2020. Weather all defendants knew what their attorneys knew or not, they should have, either way, it is a complete failure of their fiduciary duty to shareholders.

Financially rewarding individuals who have failed shareholders is a further failure of the defendants meeting their fiduciary duty. To date, the Bank has spent tens of millions of dollars of shareholder money on the defense and also the settlement of the class action lawsuit. Making the decision to defend the allegations, when they knew the truth, is shameful. Approval of this Settlement Agreement will further financially reward individuals who have put their own personal financial gain ahead of shareholders. Many of the defendants, as well as other members of Sr. Management are in line to receive multi-million dollar golden parachutes upon an ownership change of the bank. This is in addition to the multi-million dollar salaries and benefits that many of the defendants and other members of Sr. Management currently receive.  Another example of the hypocrisy is that March of 2020, Jan Williams was promoted to Senior Executive Vice President, Chief Credit Officer for EagleBank.  Susan Riel was quoted in the press release as saying " I am delighted to have been able to promote Tony and Jan and recognize ( Tony refers to another employee that was promoted, Tony Marquez ) recognize their outstanding efforts for the Bank" " These two professionals elevate our work and reflect the culture of excellence, service and integrity for which the Bank has always been known". Ms. Williams actions certainly show that there is clearly a lack of integrity. The fact that Ms. Riel and the Board would promote and financially reward Ms. Williams for her actions is reprehensible, and certainly not in the interest of shareholders.

Misleading public statements; Ron Paul was quoted in the Washington Business Journal on December 5, 2017 as saying that the Aurelius report claims are " 100 Percent Wrong ".  Charles Levingston has been quoted in the Washington Business Journal ( I believe March 2020 ) as saying that the allegations are " unproven allegations". The Bank's attorneys knew these statements were not true when they interviewed me in December 2017 and April 2020.  Susan Riel was quoted in a July 21, 2021 article in the Washington Business Journal " The Board's top priority is, as it always has been, to act in the best interest of the company and the company's stockholders..." These public statements have been misleading shareholders for years and failure to correct these statements is certainly not in the best interest of shareholders as the defendants claim. If Mr. Paul, Mr. Levingston, and Mrs. Riel are in attendance at the hearing for the Stipulation and Agreement Settlement, I certainly hope that they are asked, under oath, how the unethical and illegal activities that I have outlined here, including the evidence in the exhibits, are actions that are in the best interest of shareholders.

Another Regulation O violation that has never been disclosed involves a former colleague of mine, Ken Scales. Mr. Scales was previously employed by the Bank as a Relationship Manager. Mr. Scales has told me on more than one occasion the details surrounding a loan to a former Directors Company, Goodman

6

and Company. Mr. Scales indicated that he was told by Janice Williams, his superior, to prepare a line of credit for the Company, forget about Regulation O, and don't put the loan on the system, ( obviously an effort to shield this Regulation O violation from audit, investigators, etc. ). To my knowledge Mr. Scales has never been questioned by any Regulators, Federal Investigators, or law enforcement regarding this illegal activity.

All costs for the defense and investigations spent to date are to the detriment of shareholders ( it's shareholder money ! ) and all the result of unethical and illegal behavior by the defendants and other members of Sr. Management. These costs are the direct result of actions that were not in the best interest of shareholders.  Most of the defendants are still employed at the Bank. It would have been much less harmful to shareholders for the defendants to admit guilt, comply with Sarbanes Oxley and NASDAQ requirements  ( based upon my enclosed examples, they know of illegal and unethical activity ), and accept the appropriate punishment, yet to this day , as noted in the Stipulation and Agreement of Settlement, all defendants claim innocence, and that they have always acted in the best interest of shareholders. This is simply not true.

The board allowed Ron Paul  ( Larry Bengisnor also retired with full benefits ) to receive several million dollars in payout upon his retirement, although the bank's attorneys were well aware of the self-dealing ( among other unethical and illegal acts )regarding Potomac Investment Trust, a trust for the benefit of his children. I believe Mr. Paul's employment contract contained an ethics clause that needed to be enforced.  This action by the Board of Directors was not in the best interest of shareholders.

Please ask the defendants how the events that I have outlined here, ( selling real estate to an insider, fraudulently releasing collateral, transfering accounts, not correcting false and misleading statements, etc ) were for the benefit of shareholders? To the Contrary, all of these actions were for the benefit of the defendants and other members of Sr. Management , and not disclosing these ethics policy violations and not disclosing these activities to Federal Banking Regulators, Law enforcement, and the SEC was all for the benefit of the defendants.

On September 1, 2021 I submitted my detailed demands to the EagleBancorp  Board of Directors via email.  I have attached a copy of my letter as Exhibit H.

At the very least, any derivative settlement should only be considered after all agencies have completed their investigations. I understand that one of the defendants has recently been served with a Wells notice by the SEC. After several years of investigation, the SEC has served Charles Levingston, the CFO, with a Wells notice, which, as I understand, is a notice of their intention to bring formal charges.  The SEC has clearly determined that there was some wrongdoing. Shareholders deserve to know the complete truth prior to forever forfeiting their rights with regards to a Derivative action. It is also my understanding that Federal Bank Examiners are still investigating.

Never has there been an independent, arms-length investigation that reports to shareholders.  The class action lawsuit was settled, forever concealing any evidence that was uncovered by plaintiffs during their discovery process.  If defendants are successful in settling this Derivative action, the true facts will be

7

again kept from shareholders, and simultaneously prohibit most shareholders from future Derivative action.

Susan Riel, as CEO, had and has a fiduciary responsibility to correct false and misleading public statements made by herself, the former CEO and others. Since she has not amended these misleading statements, then she obviously agrees that all allegations in the Aurelius report are "100 percent wrong", as publicly stated by the former CEO, Ron Paul. She has chosen to neglect her duties as CEO and let these misleading statements stand. If the court agrees with this assessment, then the only conclusion to be drawn is that Mrs. Riel has not told the truth in the Stipulation and Agreement of Settlement, whereby she, and the other defendants, state that they have done nothing wrong and have always acted in the best interest of shareholders. It seems to me that the Defendants seem confused between what they selfishly believe is best for the stock share price, ( and likely their personal financial gain ) and what is in the best interest of shareholders.

In answer to the Aurelius Report claims, Larry Bensignor, then chief legal counsel of EagleBank, was quoted in the the press as saying, " EagleBank has fully complied with Regulation O in any loans it has made to entities associated with its directors" I believe my attached evidence proves this statement false and misleading. This was published in Bisnow on October 5, 2017. Ron Paul, then CEO, knew this statement to be false on October 5, 2017 ( as did Janice Williams ). Sr. Management and the Board of Directors, including all defendants, have known this statement is false for almost four years. Their attorneys first questioned me about Regulation O violations in December 2017. It has been the responsibility of the Board of Directors and the CEO to correct known false and misleading statements, which they have failed to do. So when the defendants claim they have always acted in the best interest of shareholders, it is simply not true. Making false statements can be proven to be obstruction of justice. Public statement fraud violates 10(b) of the Securities Exchange Act and SEC Rule 10(b)-5.

Investors rely on the bank's public statements, when Mr. Bensignor states " EagleBank has fully complied with Regulation O in any loans it has made to entities associated with its directors" Ron Paul says Aurelius is "100 percent wrong ", and when Susan Riel states, " The Board's top priority is, as it always has been, to act in the best interest of the company and company's stockholders...", public investors believe it., However, these statements are simply not true. Investors rely on these statements when deciding to invest in the company, and also deciding if they should protest this settlement agreement, and since they don't have access to information to the contrary, ( information that the Board has an obligation to share ) their rights to object will be lost forever, and this is not in the best interest of shareholders.

Spending additional money on corporate governance should in no way be a substitute for full disclosure of wrongdoing to shareholders. Particularly when the wrongdoing includes illegal and unethical activity. Shareholders need to know why the defendants would agree to spend $2.0 million on corporate governance, plus $500,000 to the plaintiff, ( perhaps because it is shareholder money ) when they have absolutely done nothing wrong? The same individuals who have committed and hidden unethical and illegal activity are in charge of the new efforts to thwart unethical and illegal activity? It appears that the

8

defendants are only as honest as they need to be in order to maintain their positions and reputation at EagleBank.

Where is the attorney General of the state of Maryland. Where are federal prosecutors ( EagleBank is a federally insured financial institution ). I believe the statute of limitations will expire on several of these crimes early next year.

Several of the defendants, as well as other members of Sr. Management, have bought and or sold Eagle Bancorp stock since December 2017 ( public information that is required to be disclosed by the SEC ). However, these individuals certainly had material information that the average investor did not. Additionally, some of the defendants made, or did not correct, public statements to the contrary of the truth. They made these statements, knew they were not true, did not disclose according to law, and traded in the stock. How is this in the best interest of shareholders?

The stock price did not drop substantially ( I believe roughly one half of one billion dollars in market capitalization )  because of the publication of the Aurelius report, but in fact dropped substantially because of the greedy  illegal and unethical acts perpetrated and then concealed by the defendants and members of Sr. management at the Bank. I think of the small shareholder who, perhaps due to a personal emergency, was forced to sell their stock immediately after the drop, immediately after the publication of the aurelis report.  The perpetrators of the wrongdoing are millionaires, ( millionaires likely largely due to their employment at EagleBank ) but who was looking out for the small shareholder?

According to the companys most recently filed 10-K, they state " The company has received various document requests and subpoenas from securities and banking regulators and  U.S. Attorney's office in connection with investigations, which the company believes relate to the company's identification, classification and disclosure of related party transactions....." This statement is extremely misleading. They have been publishing this statement for years. They claim misclassification of loans, while maybe technically correct, the reality is that they   made loans to insiders, or entities that insiders controlled or had an  interest in, knowing full well that this control or financial interest triggers Regulation  ( The Aurelius Report mentions several other large real estate  loans that I am sure are the subject of the investigations, however, I have no first- hand knowledge of these other Regulation O violations ). Their dilemma was that the restrictions on lending to insiders , placed upon them by Regulation O  would have prohibited these loan from being made in the first place by EagleBank.  They chose to go ahead and make these loans, knowing full well that they were in violation of Regulation O. To simply classify this as they have in their 10-K and financials is extremely misleading. Claiming ignorance or lack of oversight is also simply not true. The restrictions placed upon loans to insiders are well known to even low level bankers, let alone the defendants and others in Sr. Management. They knew it was wrong when they did it, the Aurelius Report outed them, and they continue to deny any wrongdoing. Certainly not in the best interest of shareholders.

9

# RAYMOND JAMES

September 13, 2021

504 Taylor Ct

Cranberry Township, PA 16066

RE: Account xxxx6025

To Whom It May Concern:

This is to verify Timothy Hamilton owned Eaglebank stock as of January 25, 2021 through today, September 13, 2021. He currently owns 957.00 shares. Our records do not exceed 7 years, therefore a purchase date is unable to be provided.

Thank you,

Valerie Fitzgerald

Valerie Fitzgerald

Complex Administrative Manager