# EXHIBIT C

**SUPERIOR COURT OF THE DISTRICT OF COLUMBIA**
**CIVIL DIVISION**

| | |
|---|---|
| YALE WIESBERG, Derivatively on behalf of EAGLE BANCORP, INC., | |
| Plaintiff, | No. 2021 CA 000326 B |
| v. | |
| NORMAN R. POZEZ, LESLIE LUDWIG, KATHY A. RAFFA, SUSAN G. RIEL, JAMES A. SOLTESZ, BENJAMIN M. SOTO, LELAND M. WEINSTEIN, RONALD D. PAUL, CHARLES D. LEVINGSTON, and JAMES H. LANGMEAD, | |
| Defendants, | **Judge Fern Flanagan Saddler** |
| and | **Next event: Final Settlement Hearing, Oct. 4, 2021 at 2:30 p.m.** |
| EAGLE BANCORP, INC. | |
| Nominal Defendant | |

**NOMINAL DEFENDANT EAGLE BANCORP, INC.'S REPLY MEMORANDUM IN SUPPORT OF FINAL SETTLEMENT APPROVAL**

Nominal Defendant Eagle Bancorp, Inc. (the "Company") submits this reply memorandum in further support of Plaintiff's motion for final approval of the Settlement[1] and in response to the objection of Timothy D. Hamilton, a disgruntled former employee of the Company (the "Objection").

## INTRODUCTION

The Company's Board of Directors, by an 8-0 vote of its independent directors, exercised its business judgment to determine that the Settlement is fair, reasonable, and in the best interest of the Company and its shareholders. It is undisputed that the Settlement, which was negotiated at arm's length, provides for beneficial internal control enhancements following extensive investigation by the Company, while at the same time preserving the Company's ability to bring certain claims. Specifically, the Settlement resolves derivative claims arising out of potential breaches of fiduciary duty by individuals currently or formerly affiliated with the Company, including claims pertaining to the Company's internal controls around loans to related parties, such as the loans to the Potomac Investment Trust ("PIT"), a trust established for the benefit of the children of ex-CEO Ron Paul, while preserving certain claims against Mr. Paul. In exercising its business judgment, the Board had the benefit of investigations by outside counsel and, in the context of this derivative action, the consideration of an independent committee of disinterested directors (the "Demand Committee"). Courts routinely grant considerable deference to a board's exercise of its business judgment to resolve derivative claims, especially where, as here, an independent committee consisting of disinterested directors considered the matter.[2]

---

[1]    Unless otherwise specified, capitalized terms have the same meaning as set forth in the Stipulation and Agreement of Settlement, dated January 25, 2021.

[2]    *See, e.g.*, *In re AOL Time Warner S'holder Derivative Litig.*, 2006 U.S. Dist. LEXIS 63260, at *14-15 (S.D.N.Y. Sep. 6, 2006) (in approving shareholder derivative settlement, stating that "Plaintiffs would confront

Mr. Hamilton provides no basis to reject the Settlement. In fact, his Objection seems barely acquainted with the Settlement. Mr. Hamilton's core factual allegations relate to certain Company loans and other transactions with related parties. The Settlement addresses this concern, providing for corporate governance enhancements—the adequacy of which Mr. Hamilton does not criticize—that increase the Company's internal controls over just such loans and transactions. Mr. Hamilton suggests that certain individuals should not receive the releases in the Settlement. But the Settlement expressly does not release multiple categories of claims against Mr. Paul,[3] the individual about whom Mr. Hamilton expresses the most concern. As to the released individuals, Mr. Hamilton's Objection simply disagrees with the Board's business judgment. However, as a matter of law, disagreeing with the Board's judgment is manifestly *not* a ground to reject this Settlement.

Strikingly, while Mr. Hamilton complains of legal costs the Company has incurred, the relief he seeks, upending or delaying approval of the Settlement, would only increase the

---

considerable risk if they were to litigate this action to completion" because, among other things, "Plaintiffs would . . . have to overcome the substantial protection the business judgment rule provides to independent committees of the board"); *see also Oliveira v. Sugarman*, 152 A.3d 728, 736-37 (Md. 2017) (in affirming dismissal of derivative action, stating that "Under the traditional business judgment rule, courts apply a presumption of disinterestedness, independence, and reasonable decision-making to all business decisions made by a corporate board of directors. . . . The corporate board's decision to deny the litigation demand receives the same business judgment rule presumption as any other board decision."); *Bender v. Schwartz*, 917 A.2d 142, 152 (Md. Ct. Spec. App. 2007) (in affirming dismissal of derivative action, stating that "a court reviews the board's investigation under the business judgment rule, deferring to the decision of the board or committee not to pursue litigation unless the stockholders can show either that the board or committee's investigation or decision was not conducted independently and in good faith, or that it was not within the realm of sound business judgment"); Md. Code Ann., Corp. & Ass'ns §2-405.1(g) (stating that "[a]n act of a director of a corporation is presumed to satisfy the standards of subsection (c) of this section," which provides that "A director of a corporation shall act: (1) In good faith; (2) In a manner the director reasonably believes to be in the best interests of the corporation; and (3) With the care that an ordinarily prudent person in a like position would use under similar circumstances").

[3]    As set forth in the Settlement, the Demand Committee and the Board determined to preserve certain categories of potential claims against Mr. Paul, summarized as follows: (i) claims for contribution in connection with the securities class action; (ii) claims as to Mr. Paul's compensation; (iii) claims as to the payment of Mr. Paul's attorneys' fees; and (iv) claims arising out of government actions. *See* Stipulation 1.18.

-2-

Company's costs, all for the purpose of re-investigating matters that have already been investigated at length and factored into the Board's business judgment, which may not now be second-guessed.

## ARGUMENT

### I.    THE OBJECTION CONTAINS NUMEROUS INACCURACIES

The Company terminated Mr. Hamilton in May 2020.  Mr. Hamilton is challenging his termination before OSHA, and the Company fully responded in that forum, which is the proper place for it to be resolved.  Perhaps hoping to gain leverage in that dispute, Mr. Hamilton's Objection re-litigates here the same issues as he raised before OSHA.  While Mr. Hamilton's employment grievances have no place here, it must be noted that a number of his assertions are plainly false.  For example, throughout the Objection, Mr. Hamilton misstates the requirements of Regulation O, claiming that it imposes an absolute prohibition on loans to insiders when, in reality, it makes clear that such loans, properly structured, are permissible.  Mr. Hamilton suggests (without support) that the PIT accounts were transferred from Mr. Hamilton's portfolio to another Company employee for an improper purpose.  But Exhibit B to Mr. Hamilton's Objection itself makes clear that the reason for the transfer was to "pull all loans in the relationship together under one individual," a purpose Mr. Hamilton does not dispute.  Mr. Hamilton also asserts that information regarding the sale of certain Bank-owned properties was improperly withheld from the SEC, but that topic has in fact been the subject of both document productions and witness testimony in the SEC matter.  These, and other errors, undercut any credibility the Objection might have.

### II.    THE OBJECTION DOES NOT CAST DOUBT ON THE ADEQUACY OF THE DERIVATIVE SETTLEMENT

The law favors settlements and, therefore, the standard to approve a settlement is not onerous.  The Court should approve the Settlement so long as it concludes that the terms of the

Settlement are "fair, reasonable, and adequate." *See* Preliminary Approval Order ¶ 13. The question is not whether Mr. Hamilton (or even the Court) might prefer a different resolution. The Objection does not assert, or give a basis for the Court to conclude, that the Settlement is not "fair, reasonable, and adequate." Therefore his Objection must be rejected.[4]

Where Mr. Hamilton makes assertions with specificity,[5] the main concern he raises relates to historic related party loans under Regulation O (and related topics)—which have been previously investigated and publicly disclosed.[6] Furthermore, the Board has made its business judgment as to how these issues are to be addressed, primarily by enhancing the Company's internal controls related to such loans, including through governance changes incorporated in this Settlement. These reforms (set forth in Exhibit A to the Stipulation) include, among other things, (1) a commitment to spend at least $2 million over the next three years on enhanced control functions; (2) a requirement for quarterly reports from the Chief Risk Officer to the Risk Committee of the Board regarding all remaining Ron Paul-related loans (including to PIT); (3) revisions to the Related Party Transactions policy and the Whistleblower Program; and (4) increased Board and management governance over disclosure controls and compliance generally. Mr. Hamilton does not, and cannot, criticize these reforms in any way. Nor does he

---

[4] Rejecting Mr. Hamilton's Objection will not impair Mr. Hamilton's rights in his OSHA claim.

[5] The Objection includes vague insinuations such as conclusory allegations of insider trading. Whatever Mr. Hamilton's motives may be, such vague and unreliable allegations have zero evidentiary value and no place in the Court's consideration of the adequacy of this Settlement.

[6] *See, e.g.*, Eagle Bancorp, Inc., Current Report (Form 8-K) (July 18, 2019) (disclosing "investigations and related document requests and subpoenas from government agencies examining matters, including the Company's identification, classification and disclosure of related party transactions; the retirement of certain former officers and directors; and the relationship of the Company and certain of its former officers and directors with a local public official"); Eagle Bancorp, Inc., Quarterly Report (Form 10-Q) (August 9, 2021) (disclosing similar).

attempt to rebut the fact that the Settlement was the product of arm's length negotiation by competent counsel.

Mr. Hamilton also asserts that certain individuals, Mr. Paul chief among them, breached their fiduciary duties to the Company. Any such claims, by definition, belong to the Company. And, in duly considering the Settlement and the incorporated releases, the Demand Committee and the Board have exercised their business judgment to determine that the Settlement and releases are in the Company's best interest. As a matter of law, these business judgments must be given deference and Mr. Hamilton's different view of the scope of the releases is irrelevant. The Demand Committee and the Board also exercised their business judgment to preserve Eagle's right to consider bringing certain claims against Mr. Paul in the future, including claims arising out of government actions. Accordingly, even crediting Mr. Hamilton's assertions about Mr. Paul and PIT, there is no need to delay this Settlement until the completion of government investigations. But, once again, the Board has exercised its business judgment as to how these claims are best resolved, and there is simply no basis for the Board's decision to be second-guessed by the Court.

## CONCLUSION

Accordingly, for the reasons set forth above, the Company respectfully requests that the Court overrule the Objection and approve the Settlement.

Dated: September 27, 2021

/s/ Ryan S. Spiegel
Ryan S. Spiegel (DC Bar No. 489103)
Alan S. Mark (DC Bar No. 184465)
PALEY, ROTHMAN, GOLDSTEIN,
ROSENBERG, EIG & COOPER, CHARTERED
4800 Hampden Lane, 6th Floor
Bethesda, MD 20814
Telephone: (301) 951-9337
amark@paleyrothman.com
rspiegel@paleyrothman.com

Meaghan A. Kelly (DC Bar No. 990189)
SIMPSON THACHER & BARTLETT LLP
900 G Street, N.W.
Washington, D.C. 20001
Telephone: (202) 636-5542
mkelly@stblaw.com

Paul C. Curnin (admitted *pro hac vice*)
Stephen M. Cutler (admitted *pro hac vice*)
SIMPSON THACHER & BARTLETT LLP
425 Lexington Avenue
New York, NY 10017
Telephone: (212) 455-2773
pcurnin@stblaw.com
stephen.cutler@stblaw.com

*Attorneys for Nominal Defendant Eagle Bancorp, Inc.*

-6-

## <u>CERTIFICATE OF SERVICE</u>

I hereby certify that on the 27th day of September, 2021, the foregoing was filed and served on all counsel of record via the CaseFileXpress filing system.

<u>/s/ Ryan S. Spiegel</u>