**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

| | |
|---|---|
| SHIVA STEIN, Individually and On Behalf of All Others Similarly Situated,<br><br>      Plaintiff,<br><br>   v.<br><br>EAGLE BANCORP, INC., SUSAN G. RIEL, RONALD D. PAUL, CHARLES D. LEVINGSTON, JAMES H. LANGMEAD, and LAURENCE E. BENSIGNOR,<br><br>      Defendants. | Case No. 1:19-cv-06873-LGS |

**MEMORANDUM OF LAW IN SUPPORT OF PLAINTIFFS' UNOPPOSED
MOTION FOR CLASS DISTRIBUTION ORDER**

## TABLE OF CONTENTS

I.      BACKGROUND ................................................................................................ 1

II.     CLAIMS ADMINISTRATION...................................................................... 3

III.   LATE BUT OTHERWISE ELIGIBLE CLAIMS ................................................ 5

IV.   DISTRIBUTION OF NET SETTLEMENT FUND ............................................ 7

V.     RELEASE OF CLAIMS.................................................................................... 8

VI.   THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION-RELATED FEES AND EXPENSES.................................................................................... 9

VII.  RECORDS RETENTION AND DESTRUCTION ........................................... 10

VIII. THE MAJORITY OF THE SETTLEMENT FUND WILL BE DISTRIBUTED AND THE COURT SHOULD AUTHORIZED PAYMENT OF THE REMAINING ATTORNEYS' FEES AWARDED TO LEAD COUNSEL .................................................... 10

IX.   CONCLUSION............................................................................................... 10

**TABLE OF AUTHORITIES**

<u>CASES</u>

*Hartman v. Powell*,
2001 WL 410461 (D.C. Cir. Mar. 15, 2001) ................................................................. 6

*In re "Agent Orange" Prod. Liab. Litig.*,
689 F. Supp. 1250 (E.D.N.Y. 1988) ........................................................................... 6

*In re Merrill Lynch & Co., Inc. Sec., Deriv. and ERISA Litig.*,
2010 WL 11595033 (S.D.N.Y. Dec. 23, 2010) ............................................................ 9

*In re Citigroup Inc. Sec. Litig.*,
2014 WL 7399039 (S.D.N.Y. Dec. 29, 2014) .............................................................. 6

*In re Eletrobras Sec. Litig.*,
467 F. Supp. 3d 149 (S.D.N.Y. 2020).......................................................................... 6

*In re Gypsum Antitrust Cases*,
565 F.2d 1123 (9th Cir. 1977) ............................................................................... 5, 6

*In re Orthopedic Bone Screw Prods. Liab. Litig.*,
246 F.3d 315 (3d Cir. 2001)...................................................................................... 5

*In re Patriot Nat'l, Inc. Sec. Litig.*,
2021 WL 1040462 (S.D.N.Y. Mar. 18, 2021) ............................................................ 9

*In re Toyota Motor Corp. Sec.  Litig.*,
2014 WL 12586787 (C.D. Cal. Aug. 4, 2014)............................................................. 6

Court-appointed lead plaintiff Danilee Cassinelli, as Trustee of the Danilee Cassinelli Trust DTD 7-23-93 ("Lead Plaintiff"), and additional plaintiff Norfolk County Retirement System (together with Lead Plaintiff, "Plaintiffs"), respectfully submit this memorandum of law in support of their unopposed motion ("Motion") for entry of the Proposed Class Distribution Order ("Class Distribution Order") in the above-captioned action (the "Action").[1]  If entered by the Court, the Class Distribution Order will, among other things, (i) approve the Claims Administrator's recommendations accepting and rejecting Claims submitted in the Action; (ii) direct the distribution of the Net Settlement Fund to Authorized Claimants whose Claims have been accepted as valid and approved by the Court; and (iii) approve the Claims Administrator's fees and expenses incurred in connection with the Action.  The specifics of the proposed plan for distribution of the Net Settlement Fund are set forth in the accompanying Segura Declaration.  *See* Segura Decl. ¶47(a)-(g).

## I.    BACKGROUND

On June 28, 2021, the Parties entered into the Stipulation, the terms of which established a $7,500,000 Settlement Fund for the benefit of the Settlement Class, consisting of all persons and entities who or which purchased or otherwise acquired Eagle Common Stock and/or Eagle Call Options, and/or wrote Eagle Put Options, between March 2, 2015 and July 17, 2019, inclusive (the "Settlement Class Period") and were damaged thereby.  Excluded from the Settlement Class were: (1) persons who suffered no compensable losses; and (2) (a) Defendants; (b) the legal representatives, heirs, successors, assigns, and members of the Immediate Families of the

---

[1] All capitalized terms used herein that are not otherwise defined have the meanings ascribed to them in the Stipulation and Agreement of Settlement dated June 28, 2021 (the "Stipulation") (ECF No. 72-1), or the concurrently filed Declaration of Luiggy Segura in Support of Plaintiffs' Motion for Class Distribution Order ("Segura Decl." or "Segura Declaration"), submitted on behalf of the Court-approved Claims Administrator, JND Legal Administration ("Claims Administrator").

Individual Defendants; (c) the parents, subsidiaries, assigns, successors, predecessors, and affiliates of Eagle; (d) any persons who served as officers and/or directors of Eagle during the Settlement Class Period; (e) any entity in which any of the foregoing (a) – (d) excluded persons have or had a majority ownership interest during the Settlement Class Period; (f) any trust of which any Individual Defendant is the grantor or settlor or which is for the benefit of any Individual Defendant and/or member(s) of his or her Immediate Family; and (g) Defendants' liability insurance carriers.  Also excluded from the Settlement Class were any persons and entities who or which exclude themselves by submitting a request for exclusion that is accepted by the Court.  *See* ECF No. 72-1.

The Court granted preliminary approval of the Settlement on August 16, 2021.  ECF No. 77 (the "Preliminary Approval Order").  Pursuant to the Preliminary Approval Order, the Claims Administrator mailed 35,448 copies of the Notice of (I) Pendency of Class Action and Proposed Settlement; (II) Settlement Hearing; and (III) Motion for an Award of Attorneys' Fees and Reimbursement of Litigation Expenses (the "Notice"), along with the Proof of Claim and Release Form (the "Claim Form" and, together with the Notice, the "Notice Packet") to potential members of the Settlement Class, published the Summary Notice in *Investor's Business Daily*, transmitted the Summary Notice over *PR Newswire* (a national newswire service), established case-specific website dedicated to the Settlement (www.EagleSecuritiesSettlement.com), and set up a toll-free telephone helpline.  *See* Segura Decl. ¶¶3, 5-7.  The Notice and the Settlement Website provided Settlement Class Members with information about the Settlement, including the deadlines for requesting exclusion, objecting, and filing Claims.  The Settlement Website also provided Settlement Class Members with access to downloadable documents relevant to the Settlement, such as the Stipulation, Notice, and Claim Form.

On February 10, 2022, the Court entered an order granting final approval of the Settlement as fair, reasonable, and adequate. ECF No. 102. That same day, the Court entered an order approving the Plan of Allocation, which was explained in the Notice, as providing a fair and equitable basis upon which to allocate the proceeds of the Net Settlement Fund. ECF No. 103.

Lead Counsel now request that the Court authorize the distribution of the Net Settlement Fund (after payment of the Claims Administrator expenses as discussed below, and payment of, or reserve for, Taxes and escrow fees) to Authorized Claimants.

## II.     CLAIMS ADMINISTRATION

Pursuant to the Court-approved Notice, all Settlement Class Members wishing to participate in the Settlement were required to submit Claim Forms online or by mail, postmarked or received no later than January 12, 2022. *See* ECF No. 86-3, Exhibit A at p. 4. The Claims Administrator received and reviewed all submitted Claims and, to the extent that a Claim was deficient in any regard, the Claims Administrator notified the Claimant of the deficiency and advised the Claimant as to possible ways to cure the deficiency. Segura Decl., ¶¶23-33.

Of the 20,957 Claims submitted to and fully processed by the Claims Administrator (the "Presented Claims"), 234 were paper submissions, and 159 were online submissions through the online filing portal on the Settlement Website. *Id.*, ¶11. The remaining 20,564 Presented Claims were Electronic Claims filed by E-Claim Filers, who are typically banks, brokers, nominees, and other third-party filers that file Claims on behalf of numerous Claimants. *Id.*, ¶15. Because E-Claim Filers submit a high volume of Claims on behalf of multiple Claimants, the Claims Administrator provides E-Claim Filers with the opportunity to submit a master claim form and mail a computer disc or submit an electronic file containing all the transactions of the Claimants

3

on whose behalf the E-Claim filer is submitting a Claim—rather than providing reams of paper requiring manual data entry. *Id.* This process is designed to expedite the claims process.

If a paper or online Claim was deficient or defective, the Claims Administrator sent a Notice of Deficient/Ineligible Claim Submission ("Deficiency Notice") to the Claimant, a sample of which is attached as Exhibit A to the Segura Declaration. *Id.*, ¶24, Ex. A. The Deficiency Notice advised the Claimant that he, she, or it had twenty (20) days from the date of the Deficiency Notice to submit additional information and/or documentary evidence to cure the Claim, otherwise the Claims Administrator would recommend the Claim for rejection. *Id.* JND sent a total of 239 Deficiency Notices to Claimants who filed paper or online Claims that JND determined to be defective, and was in telephonic and/or email contact with the remainder. *Id.*, ¶24.

If an Electronic Claim was deficient or defective, the Claims Administrator sent an email to each E-Claim filer with an attached spreadsheet containing detailed information associated with the accounts and indicating which of those accounts within the filing were deficient and/or rejected, samples of which are attached as Exhibit B to the Segura Declaration respectively. *Id.*, ¶26, Ex. B. Of the 20,564 Electronic Claims, 13,294 were incomplete or deficient and were filed by a total of 43 E-Claim filers. *Id.*, ¶26. The Claims Administrator worked diligently with Claimants to resolve deficiencies where possible, and, as a result of this process, a number of Claimants with initially deficient Claims are now eligible to participate in the Settlement.

Ultimately, as detailed in the Segura Declaration, after the deficiency process was complete, the Claims Administrator determined that 7,735 Claims are acceptable and should receive a distribution. Segura Decl., ¶¶42-43. This number includes 7,713 timely and valid claims, and 22 Late But Otherwise Eligible Claims (addressed in Section III below). *Id*. These Claims

represent a total Recognized Loss amount of $235,028,250.42.[2]  *Id.*, ¶¶42-43; Exs. C, D.  The

Claims Administrator also determined that 13,222 Claims are not eligible and should be rejected

for the following reasons: (i) 9,263 Claims did not result in a Recognized Claim under the Court-

approved Plan of Allocation; (ii) 2,226 were deficient Claims that were never cured; (iii) 1,689

Claims did not fit the Settlement Class definition; (iv) 32 Claims were duplicates; and (v) 12

Claims were withdrawn.  *Id.*, ¶44; Ex. E.

### III.    LATE BUT OTHERWISE ELIGIBLE CLAIMS

The Claims Administrator continued to receive Claims after the January 12, 2022 claim

filing deadline.    Although the Claims Administrator attempted to accept all eligible claims

submitted after the deadline, there must be a final cut-off date after which no more Claims may be

accepted so that a proportional distribution of the Net Settlement Fund may take place.  *See In re*

*Gypsum Antitrust Cases*, 565 F.2d 1123, 1127 (9th Cir. 1977) ("There is no question that in the

distribution of a large class settlement fund, 'a cutoff date is essential and at some point the matter

must be terminated.'") (citation omitted); *In re Orthopedic Bone Screw Prods. Liab. Litig.*, 246

F.3d 315, 329 (3d Cir. 2001).  Acceptance of additional Claims received during the finalization of

the administration process and the preparation of this Motion would necessarily require a delay in

the distribution.  Accordingly, the Claims Administrator imposed a cut-off date of July 12, 2022—

six months after the Court-imposed January 12, 2022 deadline.

Of the 20,957 Claims submitted, 63 Claims were received or postmarked after the initial

January 12, 2022 deadline, but before the Claims Administrator's imposed cut-off of July 12, 2022.

Segura Decl., ¶¶41, 43.  Of these 63 Claims, 22 are otherwise eligible ("Late But Otherwise

---

[2] The Recognized Loss amount is $233,232,767.74 for timely and valid Claims, and $1,795,482.68
for Late But Otherwise Eligible Claims.  *Id.*, ¶¶42-43.

Eligible Claims"). *Id.* at ¶43; Ex. D.  These 22 Late But Otherwise Eligible Claims have been recommended for payment. *Id.*  Lead Counsel and the Claims Administrator believe that when the equities are balanced, it would be unfair to prevent an otherwise valid Claim from participating in the distribution of the Net Settlement Fund solely because it was submitted after the deadline to submit a Claim Form, but while the Claims were still being processed. *See In re Gypsum*, 565 F.2d at 1128 (district court has discretion to grant late claims); *see also In re "Agent Orange" Prod. Liab. Litig.*, 689 F. Supp. 1250, 1261-63 (E.D.N.Y. 1988) (court permitting the qualifying late claimants and opt-out claimants to participate in the settlement distribution because "[t]he cost to the fund of admitting late claimants and readmitting the opt-out claimants to the class action should be relatively small.  No significant administrative costs need be incurred to allow the late claims and opt-out claims"); *In re Eletrobras Sec. Litig.*, 467 F. Supp. 3d 149, 150 (S.D.N.Y. 2020) (accepting "late but otherwise valid Proofs of Claim"); *In re Toyota Motor Corp. Sec.  Litig.*, No. CV 10-922 DSF (AJWx), 2014 WL 12586787, at *1 (C.D. Cal. Aug. 4, 2014) (accepting "Late but Otherwise Eligible Claims").  Accordingly, it is respectfully requested that this Court approve Lead Counsel's recommendation and permit the Claims Administrator to include the Late But Otherwise Eligible Claims in the Distribution Plan. *See* Segura Decl., ¶43; Ex. D.

Additionally, it is respectfully requested that the Court enter an Order directing that no Claims or responses to deficiency letters received after July 12, 2022 be included in the distribution. "Drawing a line is essential to achieve certainty and finality in such a large class action." *Hartman v. Powell*, No. 00-5356, 2001 WL 410461, at *1 (D.C. Cir. Mar. 15, 2001); *see also In re Citigroup Inc. Sec. Litig.*, Nos. 09–Md–2070 (SHS), 07–Cv–9901 (SHS), 2014 WL 7399039, at *4 (S.D.N.Y. Dec. 29, 2014) (quoting *In re Gypsum*, 565 F.2d at 1127).

## IV.   DISTRIBUTION OF NET SETTLEMENT FUND

Consistent with the terms of the Plan of Allocation and with the Court's approval, the Claims Administrator will conduct an initial distribution of the Net Settlement Fund to all Claimants on a *pro rata* basis whose distribution payments calculates to $10.00 or more (the "Initial Distribution"). *See* Segura Decl., ¶47(a)(ii) and (iii). Based on the substantial experience of Lead Counsel in similar distributions, it can be expected that a certain number of the payments to be distributed to Settlement Class Members who filed valid Claims will not be cashed promptly. To encourage Authorized Claimants to promptly cash their distribution checks and to avoid or reduce future expenses relating to uncashed checks, Lead Counsel propose that all the distribution checks bear a notation "CASH PROMPTLY. VOID AND SUBJECT TO REDISTRIBUTION IF NOT CASHED BY 90 DAYS AFTER ISSUE DATE." *Id.*, ¶47(b).

The Claims Administrator will make reasonable and diligent efforts to encourage Authorized Claimants who are entitled to participate in the distribution of the Net Settlement Fund to cash their distribution. However, if after nine months any funds remain in the Net Settlement Fund, by reason of uncashed checks or otherwise, the Claims Administrator will conduct a second distribution (the "Second Distribution") if Lead Counsel, in consultation with the Claims Administrator, determines that it is cost-effective to do so. *Id.*, ¶47(d). During the Second Distribution, any amounts remaining in the Net Settlement Fund after the Initial Distribution, after payment of Notice and Administration Expenses (including the estimated costs of such Second Distribution), Taxes, and any escrow fees, will be redistributed to all Authorized Claimants in the Initial Distribution who cashed their distribution checks and would receive at least $10.00 from the Second Distribution. *Id.* Following the Second Distribution, additional redistributions will occur following the same process of the Second Distribution until no funds remain in the Net

7

Settlement Fund or until Lead Counsel, in consultation with the Claims Administrator, determines that additional distributions are no longer economically feasible.  *Id.*

Finally, if any funds remain in the Net Settlement Fund after payment of any further Notice and Administration Costs and Taxes, the remaining balance shall be contributed to Public Justice, a non-sectarian, not-for-profit organization dedicated to, among other things, investor education and advocacy.  *See* Declaration of F. Paul Bland, Jr. in Support of Plaintiffs' Unopposed Motion for Class Distribution Order, submitted on behalf of Public Justice, ¶¶2-10; 12 (list of cases in which Public Justice received court approval as the *cy pres* beneficiary).  The proposed Class Distribution Order filed concurrently herewith provides for such redistribution of any residue of the Net Settlement Fund.

## V.    RELEASE OF CLAIMS

In order to allow the full and final distribution of the Net Settlement Fund, it is necessary to bar any further claims against the Net Settlement Fund beyond the amounts allocated to Authorized Claimants, and to provide that all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund, be released and discharged from any and all claims arising out of such involvement. Accordingly, Plaintiffs respectfully request that the Court release and discharge all persons involved in the review, verification, calculation, tabulation, or any other aspect of the processing of the Claims submitted herein, or otherwise involved in the administration or taxation of the Settlement Fund or the Net Settlement Fund from any and all claims arising out of such involvement, and bar all Settlement Class Members, whether or not they receive payment from the Net Settlement Fund, from making any further claims against (i) the Net Settlement Fund,

Plaintiffs, Plaintiffs' Counsel, the Claims Administrator, the Escrow Agent or any other agent retained by Plaintiffs or Lead Counsel in connection with the administration or taxation of the Settlement Fund or the Net Settlement Fund, or (ii) Defendants or Defendants' Counsel, beyond the amounts allocated to them pursuant to the terms of the Class Distribution Order, provided that such released persons acted in accordance with the Stipulation, the Judgment, and the Class Distribution Order.  *See In re Patriot Nat'l, Inc. Sec. Litig.*, No. 1:17-cv-01866-ER, 2021 WL 1040462 at \*2 (S.D.N.Y. Mar. 18, 2021); *In re Merrill Lynch & Co., Inc. Sec., Deriv. and ERISA Litig.*, No. 07-cv-9633 (JSR)(DFE), 2010 WL 11595033 at \*2 (S.D.N.Y. Dec. 23, 2010).

## VI.   THE COURT SHOULD APPROVE PAYMENT OF ADMINISTRATION-RELATED FEES AND EXPENSES

The cost of the notice and administration for this project through June 2022 is $353,277.12, not including the $17,394.81 brokerage firms and other nominees charged JND for their work related to giving notice to the Settlement Class.  Segura Decl., ¶46.  To date, the Claims Administrator has received payment of $332,226.73.  *Id.*  Thus, the current amount owed to JND is $38,445.20 (consisting of $21,050.39 for JND's past work, plus the $17,394.81 charged by brokerage firms and other nominees).  The estimate to conduct the Initial Distribution is $19,996.12.  *Id.*  Therefore, Lead Counsel respectfully requests that the Court authorize payment to the Claims Administrator from the Settlement Fund of $58,441.32, consisting of $21,050.39 for JND's past work, the $17,394.81 charged by brokerage firms and other nominees, and $19,996.12 in anticipation of the work that will be performed in conjunction with the Initial Distribution.[3]  *Id.*

---

[3] If the anticipated fees and expenses to conduct the Initial Distribution is greater than the actual cost to conduct the distribution, the excess will be returned to the Net Settlement Fund.

## VII.    RECORDS RETENTION AND DESTRUCTION

Plaintiffs respectfully request the Court order that: (i) in no less than one (1) year after the Second Distribution of the Net Settlement Fund, if that occurs, or, if there is no Second Distribution, two years after the Initial Distribution, the Claims Administrator may destroy the paper copies of the Claims and all supporting documentation; and (ii) in no less than one (1) year after all funds have been distributed, the Claims Administrator may destroy the electronic copies of the Claims and all supporting documentation.  *Id.*, ¶47(g).

## VIII.    THE MAJORITY OF THE SETTLEMENT FUND WILL BE DISTRIBUTED AND THE COURT SHOULD AUTHORIZED PAYMENT OF THE REMAINING ATTORNEYS' FEES AWARDED TO LEAD COUNSEL

The Court's Order Awarding Attorneys' Fees and Reimbursement of Litigation Expenses provided that "[h]alf of the fee award and all of the expense reimbursement are payable immediately, and the remaining half of the fee award is payable upon substantial distribution to the Settlement Class upon prior written notice to the Court."  ECF No. 104, ¶4.  As set forth in the Segura Declaration, the Distribution Plan provides for the distribution of the entire Net Settlement Fund, after deducting all payments approved by the Court, and after payment of any estimated taxes, the costs of preparing appropriate tax returns.  While there may be enough money left in the Net Settlement Fund to conduct a Second Distribution, the Claims Administrator believes that: (i) "the vast majority of the Net Settlement Fund will be disseminated to Authorized Claimants"; and (ii) "any money remaining for a Second Distribution … [will be] minimal amounts because large distributions are usually paid via wire transfer and checks for larger amounts are typically cashed."  Segura Decl., ¶48.  Accordingly, Lead Counsel respectfully requests that the Court authorize payment of the remaining half of the attorneys' fee award.

## IX.    CONCLUSION

For all of the above reasons, Plaintiffs respectfully request that the Motion be granted.

Dated: September 13, 2022

**GLANCY PRONGAY & MURRAY LLP**

By: */s/ Leanne H. Solish*
Robert V. Prongay (*pro hac vice*)
Joseph D. Cohen (*pro hac vice*)
Jason L. Krajcer (*pro hac vice*)
Leanne H. Solish (*pro hac vice*)
1925 Century Park East, Suite 2100
Los Angeles, California 90067
Telephone: (310) 201-9150
Facsimile: (310) 201-9160
Email: rprongay@glancylaw.com
        jcohen@glancylaw.com
        jkrajcer@glancylaw.com
        lsolish@glancylaw.com

*Counsel for Lead Plaintiff and Lead Counsel
for the Settlement Class*

**LABATION SUCHAROW LLP**
Francis P. McConville
140 Broadway, 34th Floor
New York, New York 10005
Telephone: (212) 907-0700
Facsimile: (212) 818-0477
Email: fmcconville@labaton.com

*Counsel for Norfolk County Retirement System*

11

## CERTIFICATE OF SERVICE

I hereby certify that the foregoing document was electronically filed with the Clerk of

Court via the CM/ECF system, which will send Notice of such filing to all counsel of record.

Dated: September 13, 2022                    *s/ Leanne H. Solish*
                                             Leanne H. Solish